IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA,**
*Appellee,*


*v.*


**SAMKEITA JAHVEH JURDEN,**
*Appellant.*

---

No. CR-15-0236-PR
Filed July 1, 2016

---

Appeal from the Superior Court in Maricopa County
The Honorable Brian Kaiser, Commissioner
No. CR-2012-150667
**AFFIRMED IN PART, VACATED IN PART**

Opinion of the Court of Appeals, Division One
237 Ariz. 423, 352 P.3d 455 (App. 2015)
**VACATED**

---

COUNSEL:

Mark Brnovich, Arizona Attorney General, John R. Lopez IV, Solicitor General, Joseph T. Maziarz, Chief Counsel, Criminal Appeals Section, Christopher M. DeRose (argued), Special Assistant Attorney General for Appeals, Criminal Appeals Section, Phoenix, Attorneys for State of Arizona

Maricopa County Public Defender's Office, Jeffrey L. Force (argued), Deputy Public Defender, Phoenix, Attorneys for Samkeita Jahveh Jurden

---

JUSTICE BOLICK authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES BRUTINEL and TIMMER joined.

———————————

JUSTICE BOLICK, opinion of the Court:

¶1        We granted review to determine whether multiple convictions under Arizona's resisting arrest statute, A.R.S. § 13-2508, that arise from a single, uninterrupted course of conduct constitute multiple convictions for the same offense in violation of the Double Jeopardy Clause. We hold that, regardless of the number of officers involved, § 13-2508 only permits one conviction when a defendant resists an arrest in the course of a single, continuous event.

## I.    FACTUAL AND PROCEDURAL HISTORY

¶2        In September 2012, Samkeita Jahveh Jurden walked into a department store shirtless, shoeless, and with an unleashed dog. The store's security guard contacted the police after Jurden refused to leave. Jurden remained even after two officers arrived and also asked him to leave. When the officers attempted to arrest Jurden, he resisted by biting and kicking one officer and flailing and pulling his arms away from the other. The officers struggled with Jurden for nearly four minutes before subduing and handcuffing him. The resistance and arrest formed one, uninterrupted course of conduct.

¶3        A grand jury indicted Jurden on two counts of aggravated assault, one count of criminal trespass, and two counts of resisting arrest under A.R.S. § 13-2508(A)(1)—one for each officer resisted. A jury found Jurden guilty on all charges except one aggravated assault count.

¶4        The trial court sentenced Jurden to concurrent rather than consecutive terms of imprisonment. In accordance with A.R.S. § 13-711(A), the trial judge explained his reasoning:

> [A]ll the more when I watch the video in this case, it's all one incident and it starts and it just continues. . . . Perhaps, if there were some lengthy delay between one event and another, there might be a better justification of the idea of consecutive sentences. But this all starts and ends in just one big melee, really, and so the idea of consecutive sentences here doesn't seem appropriate to me, under the circumstances.

¶5         On appeal, Jurden argued that his two convictions under § 13-2508 for resisting arrest arose from a single offense and, therefore, his second conviction arose from the same offense and violated the Double Jeopardy Clause.  In a split decision, the court of appeals agreed and vacated one of the convictions.  *State v. Jurden*, 237 Ariz. 423, 429 ¶ 21, 352 P.3d 455, 461 (App. 2015).

¶6         We granted review because whether § 13-2508 authorizes multiple convictions and punishments for resisting arrest in one, uninterrupted course of conduct that involves more than one officer presents a recurring issue of statewide importance.  We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.    DISCUSSION

¶7         This case presents an issue of statutory interpretation, which we review de novo.  *Lubin v. Thomas*, 213 Ariz. 496, 498 ¶ 13, 144 P.3d 510, 512 (2006).  However, it also implicates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.  Because Jurden failed to raise the double jeopardy objection in the trial court, we review only for fundamental error.  *See State v. Miller*, 234 Ariz. 31, 36 ¶ 7, 316 P.3d 1219, 1224 (2013); *State v. Bolton*, 182 Ariz. 290, 297, 896 P.2d 830, 837 (1995).  A conviction or sentence that violates the Double Jeopardy Clause constitutes fundamental error.  *State v. McGill*, 213 Ariz. 147, 153 ¶ 21, 140 P.3d 930, 936 (2006).

¶8         The parties disagree whether a defendant may be convicted under § 13-2508 of multiple counts of resisting arrest resulting from a single, continuous act of resistance involving multiple officers.  Section 13-2508 states:

> A. A person commits resisting arrest by intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by:
>
> 1. Using or threatening to use physical force against the peace officer or another.
>
> 2. Using any other means creating a substantial risk of causing physical injury to the peace officer or another.

3

3. Engaging in passive resistance.

B. Resisting arrest pursuant to subsection A, paragraph 1 or 2 of this section is a class 6 felony. Resisting arrest pursuant to subsection A, paragraph 3 of this section is a class 1 misdemeanor.

C. For the purposes of this section, "passive resistance" means a nonviolent physical act or failure to act that is intended to impede, hinder or delay the effecting of an arrest.

¶9 The State argues that § 13-2508(A)(1) is victim-directed, meaning a separate offense is committed for each peace officer against whom physical force is directed. Jurden argues that the statute is event-directed, so that the single, continuous act of resisting arrest constitutes one offense, regardless of how many officers were resisted. If Jurden is correct, then subjecting him to conviction and punishment for two counts of resisting arrest violates the prohibition against double jeopardy.

¶10 The Double Jeopardy Clause protects against multiple punishments for the same offense. *State v. Eagle*, 196 Ariz. 188, 190 ¶ 6, 994 P.2d 395, 397 (2000); *see also Whalen v. United States*, 445 U.S. 684, 688 (1980).[1] The protection against double jeopardy may be triggered in two contexts. First, if the same conduct is held to constitute a violation of two different criminal statutes, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *accord United States v. Dixon*, 509 U.S. 688, 696 (1993); *see also Eagle*, 196 Ariz. at 190 ¶ 6, 994 P.2d at 397; *cf.* A.R.S. § 13-116 (requiring concurrent sentences for a single "act or omission which is made punishable in different ways by different sections of the laws").

¶11 Second, if multiple violations of the same statute are based on the same conduct, there can be only one conviction if there is a single offense. *See, e.g.*, *State v. Powers*, 200 Ariz. 123, 125 ¶ 5, 23 P.3d 668, 670

---

[1] On appeal, Jurden raised article 2, section 10 of the Arizona Constitution, which also protects against double jeopardy, but did not separately argue that provision. This Court has previously indicated that the provision is coextensive with the Fifth Amendment's Double Jeopardy Clause, *see Eagle*, 196 Ariz. at 190 ¶ 5, 994 P.2d at 397, a holding that we are not called upon to reconsider here.

(App. 2001), *approved*, 200 Ariz. 363, 26 P.3d 1134 (2001). In such cases, the statutory definition of the crime determines the scope of conduct for which a discrete charge can be brought, which the United States Supreme Court has referred to as the "allowable unit of prosecution." *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952). Because our decisions have not definitively addressed the analysis pertaining to "unit of prosecution" cases, we endeavor to do so here.

¶12 The seminal United States Supreme Court case is *Ladner v. United States*, 358 U.S. 169 (1958), in which the Court reviewed a consecutive sentence on a second assault charge where the defendant discharged his weapon once but wounded two officers. Examining the federal assault statute, the Court asked: "Did Congress mean that the single discharge of a shotgun would constitute one assault, and thus only one offense, regardless of the number of officers affected, or did Congress define a separate offense for each federal officer affected by the doing of the act?" *Id.* at 173. The Court examined the statutory language, history, and purpose, which it found inconclusive. *Id.* at 173–77. The Court reasoned, "[A]n interpretation that there are as many assaults committed as there are officers affected would produce incongruous results." *Id.* at 177. Under such a reading, a defendant who seriously injured an officer would receive a maximum sentence of ten years, "but if he points a gun at five officers, putting all of them in apprehension of harm, he would commit five offenses punishable by 50 years' imprisonment, even though he does not fire the gun and no officer actually suffers injury." *Id.* Finally, the Court applied the "policy of lenity," in which the Court "will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Id.* at 178. These factors caused the Court to conclude that the discharge of the shotgun constituted only one assault. *Id.*

¶13 Other state supreme courts have applied these criteria in "unit of prosecution" cases. In *Commonwealth v. Rabb*, the Massachusetts Supreme Judicial Court instructed:

> The appropriate inquiry in a case like this . . . asks what "unit of prosecution" was intended by the Legislature as the punishable act. . . . The inquiry requires us to look to the language and purpose of the statutes, to see whether they speak directly to the issue of the appropriate unit of prosecution, and if they do not, to ascertain that unit, keeping in mind that any ambiguity that arises in the process must be resolved, under the rule of lenity, in the defendant's favor.

725 N.E.2d 1036, 1041 (Mass. 2000); *accord State v. Schoonover*, 133 P.3d 48, 65 (Kan. 2006) ("[I]n unit of prosecution cases the Court applies a rule of lenity.").

¶14 The Arizona cases cited by the State are not helpful in determining the unit of prosecution because they neither address double jeopardy nor discuss the unit of prosecution in § 13-2508. *See State v. Mitchell*, 204 Ariz. 216, 62 P.3d 616 (App. 2003) (determining the meaning of "effecting an arrest"); *State v. Sorkhabi*, 202 Ariz. 450, 452 ¶ 9, 46 P.3d 1071, 1073 (App. 2002) (finding that resisting arrest is not a victimless crime, but rather a crime against a person where a "[d]efendant must use or threaten to use physical force or any other means that creates a substantial risk of causing physical injury to the peace officer"); *State v. Womack*, 174 Ariz. 108, 111, 847 P.2d 609, 612 (App. 1992) (finding that the statute did not apply to a defendant who led officers on a high speed chase because the statute prohibits threats or assaultive behavior directed toward an arresting officer, whereas the chase was meant to put as much distance as possible between the defendant and the officers).

¶15 Our objective in interpreting statutes is to give effect to the legislature's intent. *See Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 383 ¶ 8, 296 P.3d 42, 46 (2013). If the statutory language is unambiguous, we apply it as written without further analysis. *Id.* If, however, the statute is subject to more than one reasonable interpretation, we consider secondary principles of statutory interpretation, such as the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose. *Id.*

¶16 We find § 13-2508 is ambiguous because it may be reasonably read to designate either an event-directed or victim-directed unit of prosecution. We agree with the court of appeals that § 13-2508(A) may be reasonably read as defining the offense as intentionally preventing or attempting to prevent an arrest, with subsections (1), (2), and (3) describing the various ways to resist a single arrest. *Jurden*, 237 Ariz. at 426 ¶ 10, 352 P.3d at 458. But § 13-2508(A) may also be reasonably read as defining the offense as intentionally preventing or attempting to prevent a peace officer from effecting an arrest, where the unit of prosecution focuses on each officer resisted.

¶17 Because the language of § 13-2508(A) is reasonably susceptible to two differing interpretations, we must turn to secondary statutory construction methods to ascertain the unit of prosecution. Utilizing those methods, we hold that § 13-2508 describes an event-directed

unit of prosecution that prohibits multiple convictions and punishments for resisting arrest when, as here, the counts stem from one, uninterrupted event.

¶18 The legislative history of the statute is not particularly helpful. Before 1977, Arizona's resisting arrest statute provided that a person illegally arrested could resist the arrest, using whatever force necessary, short of killing the arresting officer. *Dugan v. State*, 54 Ariz. 247, 250, 94 P.2d 873, 874 (1939). In 1977, the Arizona Legislature enacted a new criminal code that included § 13-2508, which prohibited a person from resisting any arrest, legal or not. 1977 Ariz. Sess. Laws, ch. 142, § 86 (1st Reg. Sess.). In 2012, the legislature amended the statute to include passive resistance as a means to resist arrest. 2012 Ariz. Sess. Laws, ch. 265, § 1 (2d Reg. Sess.); § 13-2508(A)(3). However, neither party nor this Court has found in this history any indication that the legislature intended the statute to describe an event-directed or instead a victim-directed offense.

¶19 Turning to the statute's purpose, we find that § 13-2508 addresses multiple objectives. There is no question that § 13-2508 seeks to protect peace officers. *See Mitchell*, 204 Ariz. at 219 ¶ 16, 62 P.3d at 619 ("The purpose of the resisting arrest statute is to protect peace officers and citizens from substantial risk of physical injury."). But the statute also seeks to protect the authority of the state. That goal is reflected in the statutory language, which requires that the resistance be directed against a person "acting under color of . . . official authority." A.R.S. § 13-2508(A). As the court of appeals found, this serves to "criminalize a person's conduct that presents a risk of harm in a particular context—when the actor is interfering with the peace officer's efforts to exercise state authority." *Jurden*, 237 Ariz. at 428 ¶ 18, 352 P.3d at 460.

¶20 Focusing on the event also finds support in the common law, which recognized that the crime of resisting arrest is "an offense against the State and not personally against the officers." *Purnell v. State*, 827 A.2d 68, 80 (Md. 2003), *cited with approval in State v. Le Noble*, 216 Ariz. 180, 182–83 ¶ 12, 164 P.3d 686, 688–89 (App. 2007). Insofar as resisting arrest is an offense against the state's authority, the unit of prosecution would not depend on the number of officers resisted, but rather on each arrest resisted in defiance of state authority.

¶21 An event-directed unit of prosecution satisfies both purposes of the statute. The purpose of protecting officers is advanced with an event-directed offense because whether a person resists one or several officers in a continuous event, he may be charged with and convicted of resisting

arrest. A single charge of resisting arrest in each uninterrupted course of conduct satisfies the purpose of mandating submission to the state.

**¶22** The statute's context, structure, and effects also support our conclusion that § 13-2508 is an event-directed offense. In 2012, the legislature added passive resistance to the offenses covered by the statute. 2012 Ariz. Sess. Laws, ch. 265, § 1; § 13-2508(A)(3). Passive resistance is defined as "a nonviolent physical act or failure to act that is intended to impede, hinder or delay the effecting of an arrest." A.R.S. § 13-2508(C). This subsection does not require action directed against an officer, but serves to punish anyone who impedes the arrest, which is a function of the state's authority. This language describes a unit of prosecution grounded in the event of the arrest, not the officers.

**¶23** The legislature's addition of passive resistance also makes it clear that a victim-directed reading of § 13-2508 could potentially lead to unintended outcomes. For example, a person who simply does not open the door when officers attempt to arrest him commits passive resistance under § 13-2508(C). Many officers may break open the door, find the suspect, and "effect" the arrest under § 13-2508(A).[2] Although the arrest could have been made by a single officer, the arrestee would nonetheless be subject to a resisting–arrest charge for each officer who took part in the arrest. Multiple convictions would not further the statute's purposes.

**¶24** Section 13-2508's placement within the overall criminal statutory scheme also demonstrates a legislative intent to deter and punish those who interfere with state authority rather than those who attack individual officers. *See Grant v. Bd. of Regents of Univs. and State Colls. of Ariz.*, 133 Ariz. 527, 529, 652 P.2d 1374, 1376 (1982). Section 13-2508 is placed in the "Escape and Related Offenses" section of Arizona's criminal code. A.R.S. tit. 13, ch. 25. Resisting arrest is placed in the same chapter as escape, A.R.S. §§ 13-2502–2504; promoting prison contraband, A.R.S. § 13-2505; failure to appear, A.R.S. §§ 13-2506–2507; resisting an order directing, regulating or controlling a motor vehicle, A.R.S. § 13-2509; hindering prosecution, A.R.S. §§ 13-2510–2512; failure to discharge duties, A.R.S. § 13-2513; and promoting secure care facility contraband, A.R.S. § 13-2514. These statutes focus on violations of state authority rather than

---

[2] The issue of what "effecting an arrest" means was explicitly analyzed in *Mitchell*, 204 Ariz. at 218-19 ¶¶ 11–18, 62 P.3d at 618–19. The court determined that effecting an arrest under § 13-2508 "connotes successful, effective restraint or submission of the person," which is to be determined on a case-by-case basis. *Id.* at 219 ¶ 15, 62 P.3d at 619.

concentrating on the individual state actors who may be involved in the crime. Although not dispositive, the placement of § 13-2508 within a chapter that otherwise only deals with offenses against the state supports an inference of legislative intent to create an event-directed unit of prosecution that focuses on punishing those who interfere with state authority.

¶25 We find further support for our decision that § 13-2508 describes an event-directed offense in complementary Arizona statutes. Each individual officer is protected under Arizona's assault statutes, A.R.S. §§ 13-1203–1204, which are notably placed in a separate chapter of the code from the resisting arrest statute. These statutes separately and properly criminalize victim-directed offenses when a person resists officers attempting to effect an arrest. Therefore, the goal of protecting individual officers does not require interpreting § 13-2508 as a victim-focused offense because a criminal sanction already exists under §§ 13-1203–1204 for injuries or threat of injuries to officers. Indeed, Jurden was charged with two counts of assault and convicted of one count of aggravated assault under these two statutes. Moreover, a simple assault under § 13-1203 becomes a more serious aggravated assault if the assailant knows or should know that the victim is a peace officer engaged in executing his official duties. A.R.S. § 13-1204(A)(8).

¶26 In sum, we conclude that § 13-2508 yields two reasonable interpretations. It can be read as either containing an event-directed or victim-directed unit of prosecution. The statute serves both to punish resistance to state authority and to protect officers. But its primary purpose is the first, and allowing multiple criminal convictions could produce unintended and unfair results. This reading does not work any hardship upon law enforcement, given that one count of resisting arrest can be coupled in appropriate circumstances with assault charges, as was the case here. For all the reasons set forth above, we conclude the legislature did not intend, and the Double Jeopardy Clause does not allow, multiple convictions and punishments under § 13-2508 for a single, continuous act of resisting arrest.

### III.    CONCLUSION

¶27 For the foregoing reasons, we vacate the opinion of the court of appeals, vacate Jurden's second conviction for resisting arrest, and affirm the remaining convictions and sentences.