CATTANI, Judge:
*200 ¶ 1 Brian Jamel Matthews appeals his conviction and sentence for resisting arrest. He argues that the superior court erred by designating two arresting officers as victims and thus allowing the officers to refuse pretrial defense interviews under Arizona's Victims' Bill of Rights. Matthews further argues that the court erred by declining to instruct the jury (1) that passive resistance is a lesser-included offense of resisting arrest, and (2) regarding excessive force by law enforcement officers. We hold that multiple arresting officers can be victims of a single charge of resisting arrest under Arizona Revised Statutes ("A.R.S.") § 13-2508(A)(1), and that such victims retain the right to refuse pretrial defense interviews. We further hold that passive resistance is not a lesser-included offense of resisting arrest through physical force, and that the evidence did not support Matthews's requested excessive force instruction. Accordingly, and for reasons that follow, we affirm Matthews's conviction and sentence.
FACTS AND PROCEDURAL BACKGROUND
¶ 2 In May 2016, two Phoenix Police officers patrolling a south Phoenix neighborhood recognized Matthews walking down the street. Knowing that he had an outstanding warrant, the officers turned their patrol car around to stop him, and one of the officers called out to Matthews and made eye contact with him, but he continued walking. Once the officers drew closer, Matthews stopped and sat on a small electrical box, but when one of the officers told Matthews there was an outstanding warrant for his arrest, Matthews abruptly stood up. The officers grabbed Matthews by his arms, but he nevertheless tried to leave. The officers pinned Matthews against a wall, but Matthews kept his arms in front of him and lunged back and forth. The officers ordered him to stop resisting, but he continued to struggle, so they brought him to the ground. One officer placed his knee on Matthews's back, and the officers together were able to pull his arms behind his back to handcuff him.
¶ 3 Matthews had been shot in the back about two months earlier and was still undergoing rehabilitation. After the arrest, Matthews had to be taken to the hospital for injuries related to the gunshot wound.
¶ 4 The State charged Matthews with one count of resisting arrest "by using or threatening to use physical force against the peace officer(s)." Following a jury trial, he was convicted as charged, and the superior court sentenced him to three years' imprisonment. Matthews timely appealed, and we have jurisdiction under A.R.S. § 13-4033(A).
DISCUSSION
I. Designating the Officers as Victims.
¶ 5 Matthews contends that the superior court erred by finding that the two police officers who arrested him were victims under the Victims' Bill of Rights. See Ariz. Const. art. 2. We review the superior court's interpretation of this constitutional provision de novo. State ex rel. Montgomery v. Padilla , 238 Ariz. 560, 564, ¶ 12, 364 P.3d 479, 483 (App. 2015).
¶ 6 The Victims' Bill of Rights defines a "victim" as a person "against whom the criminal offense has been committed." Ariz. Const. art. 2, § 2.1 (C). A victim has the right to refuse a pretrial interview with the defendant. Id. § 2.1 (A)(5).
¶ 7 Under A.R.S. § 13-2508(A)(1), the crime of resisting arrest is committed by "intentionally preventing or attempting to prevent ... a peace officer ... from effecting an arrest by ... [u]sing or threatening to use physical force against the peace officer or another." (Emphasis added.) In State v. Sorkhabi , 202 Ariz. 450, 452-53, ¶¶ 9, 11, 46 P.3d 1071, 1073-74 (App. 2002), this court noted that because "[a]nother person must *201 be involved before a defendant can commit the crime of resisting arrest," the crime is necessarily directed against another person. We therefore held that a police officer can be a victim of resisting arrest. Id. at 452, ¶ 7, 46 P.3d at 1073.
¶ 8 Matthews recognizes our holding in Sorkhabi but argues that it should be limited in light of additions to the resisting arrest statute, and because of the Arizona Supreme Court's decision in State v. Jurden , 239 Ariz. 526, 373 P.3d 543 (2016). In 2012, the Legislature amended A.R.S. § 13-2508 to add "passive resistance" as a means by which a person can resist arrest. A.R.S. § 13-2508(A)(3) ; 2012 Ariz. Sess. Laws ch. 265, § 1 (50th Leg., 2d Reg. Sess.). "Passive resistance" is defined as "a nonviolent physical act or failure to act that is intended to impede, hinder or delay the effecting of an arrest." A.R.S. § 13-2508(C). Matthews argues that this addition to the statute demonstrates a legislative intent to make resisting arrest a victimless crime, and thus that the arresting officers in this case should not have been designated as victims. But the statutory amendment did not remove subsection (A)(1), under which Matthews was charged and which Sorkhabi held was an offense against an officer. See Sorkhabi , 202 Ariz. at 452-53, ¶¶ 9, 11, 46 P.3d at 1073-74. And passive resistance was not at issue in this case-Matthews was not charged with it, nor did the evidence suggest he should have been. We will not infer that the amendment providing an additional way to commit resisting arrest changed the statute's meaning so as to supersede Sorkhabi 's holding. Cf. Blevins v. Gov't Emps. Ins. Co. , 227 Ariz. 456, 459-62, ¶¶ 12-25, 258 P.3d 274, 277-280 (App. 2011) (reasoning that subsequent statutory changes did not implicitly overrule precedent when the statute and case law were reconcilable). Because Matthews was charged and convicted under (A)(1), which the amendment left untouched, Sorkhabi remains controlling.
¶ 9 Matthews's reliance on Jurden is similarly unavailing. In that case, the Arizona Supreme Court analyzed whether the Double Jeopardy Clause prohibits multiple resisting arrest convictions that arise from a single uninterrupted course of conduct. 239 Ariz. at 527, ¶ 1, 373 P.3d at 544. The court determined that resisting arrest is an event-directed crime (as opposed to a victim-directed crime), which permits only one conviction per single event of resisting arrest even if that event involves multiple officers. Id. at 527-28, 532, ¶¶ 1, 26, 373 P.3d at 544-45, 549. Contrary to Matthews's contention, Jurden is not inconsistent with Sorkhabi because the number of charged offenses does not dictate the number of victims resulting from the charged offense. See State v. Guadagni , 218 Ariz. 1, 6, ¶¶ 15, 17, 178 P.3d 473, 478 (App. 2008) (noting that the facts underlying a conviction determine whether there are victims, and holding that two women (both legal wife and putative wife) were victims of the husband's single count of bigamy).
¶ 10 Matthews also notes that assault against an officer and resisting arrest are in different chapters of the criminal code. Compare A.R.S. §§ 13-1203, -1204 (assault), with § 13-2508 (resisting arrest). Citing Jurden , he argues that unlike the assault statute, § 13-2508 is not meant to protect the officer, but rather to punish those who interfere with State authority. See 239 Ariz. at 531, ¶ 20, 373 P.3d at 548. Although Jurden cites the common law principle that resisting arrest is "an offense against the State and not personally against the officers," id. (citation omitted), the court found in that case that § 13-2508 serves two purposes-"to punish resistance to state authority and to protect officers." Id. at 532, ¶ 26, 373 P.3d 543 (emphasis added). Accordingly, the fact that there is a separate offense for assaulting an officer does not dictate whether an officer can be a victim of resisting arrest.
¶ 11 Matthews alternatively argues that even if the court correctly designated the officers as victims under the Victims' Bill of Rights, the officers' refusal to participate in pretrial interviews violated his due process right to investigate the offense and present an effective defense. We review the court's decision on Matthews's constitutional claim de novo. See State v. Connor , 215 Ariz. 553, 557, ¶ 6, 161 P.3d 596, 601 (App. 2007).
¶ 12 Victims' rights under the state constitution must be "balanced against the defendant's due process right to a fundamentally *202 fair trial," and when the two conflict in a direct manner, the defendant's federal constitutional rights prevail. State ex rel. Romley v. Superior Court (Roper) , 172 Ariz. 232, 240-41, 836 P.2d 445, 453-54 (App. 1992). A defendant's due process right entitles him to disclosure of evidence held by the prosecution that is favorable to his defense and material to his guilt or punishment. Brady v. Maryland , 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ; see also Roper , 172 Ariz. at 238, 836 P.2d at 451. But as to other evidence, because "[t]here is no general constitutional right to discovery in a criminal case," Weatherford v. Bursey , 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), before a victim may be compelled to disclose information or sit for an interview, the defendant must show "a reasonable possibility" that he is entitled to the information as a matter of due process. Connor , 215 Ariz. at 558, ¶ 10, 161 P.3d at 601.
¶ 13 Matthews asserted in the superior court that designating the officers as victims "would eliminate [his] ability to interview the only witnesses to his alleged offense." But this assertion did not suggest a reasonable possibility that interviews with the officers would have provided exculpatory information or information necessary for effective cross-examination. See State v. Sarullo , 219 Ariz. 431, 437, ¶¶ 20-21, 199 P.3d 686, 692 (App. 2008) ; see also Connor , 215 Ariz. at 558, ¶¶ 10-11, 161 P.3d at 601. Moreover, Matthews does not point to anything in the officers' trial testimony that was surprising or misleading or otherwise inconsistent with information provided in the properly-disclosed police report. Accordingly, Matthews has not established a due process violation, and the court did not err by designating the officers as victims or by allowing the officers to refuse pretrial interviews.
II. Jury Instructions on Passive Resistance and Excessive Force.
¶ 14 Matthews contends that the superior court erred by not instructing the jury on (1) passive resistance as a lesser-included offense of resisting arrest through physical force and (2) use of excessive force by officers while making an arrest. We review the superior court's refusal to include a jury instruction for an abuse of discretion. State v. Bolton , 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995).
¶ 15 Matthews first contends that the court erred by not instructing the jury that passive resistance under § 13-2508(A)(3) is a lesser-included offense of resisting arrest through physical force, as provided in subsection (A)(1). Whether an offense constitutes a lesser-included offense of a greater offense is a question of law that we review de novo. State v. Cheramie , 218 Ariz. 447, 448, ¶ 8, 189 P.3d 374, 375 (2008). A lesser-included offense is "composed solely of some but not all of the elements of the greater crime so that it is impossible to have committed the [greater offense] without having committed the lesser one." State v. Celaya , 135 Ariz. 248, 251, 660 P.2d 849, 852 (1983). "[T]he greater must have all the elements of the lesser plus at least one additional element." In re Victoria K. , 198 Ariz. 527, 530, ¶ 15, 11 P.3d 1066, 1069 (App. 2000). Under § 13-2508(A)(1), resisting arrest involves using or threatening force against an officer. Under (A)(3), resisting arrest includes "[e]ngaging in passive resistance," which subsection (C) defines as "a nonviolent physical act or failure to act that is intended to impede, hinder or delay the effecting of an arrest." But committing resisting arrest using physical force against the officer under (A)(1) means the person cannot have committed resisting arrest by passive resistance under (A)(3), because using or threatening force is not "nonviolent." Therefore, resisting arrest by passive resistance is not a lesser-included offense of resisting arrest under (A)(1), but instead is merely an alternative way to commit resisting arrest.
¶ 16 Furthermore, the evidence did not support an instruction on passive resistance. See State v. Lujan , 136 Ariz. 102, 104, 664 P.2d 646, 648 (1983) ("Generally, a defendant is entitled to an instruction on any theory of the case reasonably supported by the evidence."). Matthews did not contest that he physically struggled with the police. In fact, he testified that while he was "screaming and stuff," he was trying to "[g]et [the officer's] knee off of [his] back." And *203 Matthews did not present any evidence that he engaged in nonviolent physical acts-for example, he did not run away without making physical contact or make his body limp to make it difficult for the officers to effect the arrest. See State v. Lee , 217 Ariz. 514, 516, ¶¶ 8-9, 176 P.3d 712, 714 (App. 2008) (noting that running from the police without having any physical contact might not constitute resisting arrest under § 13-2508(A)(1) or (2) ); see also Forrester v. City of San Diego , 25 F.3d 804, 810 (9th Cir. 1994) (Kleinfeld, J., dissenting) (noting that demonstrators "resisted arrest passively, not actively, by going limp"); United States v. Heid , 904 F.2d 69, 69 (D.C. Cir. 1990) (noting the "passive act of going or remaining limp"). Accordingly, the court did not err by declining to give Matthews's requested passive resistance instruction.
¶ 17 Matthews next contends that the court erred by declining to instruct the jury that an officer may not use excessive force while making an arrest. See A.R.S. § 13-3881(B). An officer's use of physical force is "excessive" if it goes beyond that which is "immediately necessary to effect the arrest or detention." A.R.S. § 13-409(1). As noted in the Revised Arizona Jury Instructions ("RAJI"), an excessive force instruction under § 13-3881(B) is appropriate only when the defendant claims his resistance was justified by an officer's excessive use of force. RAJI Stat. Crim. 38:81, Use Note (4th ed. 2017); see also A.R.S. § 13-404(B)(2) (resisting arrest may be justified as a response to an officer's use of excessive force).
¶ 18 The superior court instructed the jury on § 13-3881(A), which provides that "[a]n arrest is made by an actual restraint of the person to be arrested," but declined Matthews's request to instruct on subsection (B), which clarifies that "[n]o unnecessary or unreasonable force shall be used in making an arrest, and the person arrested shall not be subjected to any greater restraint than necessary for his detention." The court reasoned that, based on Matthews's arguments and the evidence presented at trial, an instruction on excessive force would be irrelevant and confusing.
¶ 19 Matthews did not explicitly argue at trial that the officers used excessive force, nor did he present a justification defense. Instead, Matthews's counsel asserted during opening statement and closing argument that Matthews did not intend to avoid arrest, suggesting that the alleged "resistance" was actually an involuntary reflex to the severe pain caused by an officer's knee pressing against the bullet wound on Matthews's back. Matthews therefore did not argue that his resistance was excused by excessive force; rather, he argued that he did not resist in the first place. Although Matthews testified that an officer pressed his knee against his back after he had warned the officers about his wound, and that he had to be taken to the hospital for his wound, such evidence does not show that the officers used "unnecessary or unreasonable force" within the meaning of the statute; it merely shows that the force the officers used-regardless of its reasonableness-caused Matthews severe pain. Moreover, other evidence indicated that Matthews's movements, even before the officers made physical contact with him, suggested he was trying to get away, and not simply responding to allegedly excessive force.
CONCLUSION
¶ 20 Matthews's conviction and sentence are affirmed.