NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

MALIK JALEEL LAWS, *Appellant*.

No. 1 CA-CR 19-0518
FILED 10-6-2020

Appeal from the Superior Court in Maricopa County
No. CR 2018-156744-001
The Honorable Marvin L. Davis, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Lawrence S. Matthew
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Maurice Portley[1] joined.

C A M P B E L L, Judge:

¶1        Malik Jaleel Laws appeals from his convictions and sentences for disorderly conduct, resisting arrest, and aggravated assault. For the following reasons, we modify the sentences in part and affirm the convictions and sentences as modified.

## BACKGROUND[2]

¶2        Responding to a reported disturbance at a convenience store, an officer spoke with the store clerk who contacted the police. After the store clerk identified Laws as one of the individuals involved in a physical altercation, the police officer approached him, and Laws walked away. The officer followed Laws and repeatedly instructed him to stop, but Laws continued walking toward an intersection. When he entered the intersection, Laws turned toward the officer and yelled that he would not stop.

¶3        Moments later, the officer caught up to Laws and grabbed him in the intersection. As Laws struggled to break free from the officer's grasp, the officer kneed his leg repeatedly, trying to push him to the ground. When he eventually fell to the ground, Laws continued struggling and began kicking. To gain control, the officer attempted to roll Laws over, but during the maneuver, Laws bit four of the officer's fingers.

¶4        While the officer struggled to restrain Laws, another officer parked her patrol car in the street to prevent traffic from hitting Laws or

---

[1] The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2] We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

any of the officers. Soon thereafter, other officers deployed their tasers to stun Laws, and he was handcuffed and taken into custody.

¶5        The State charged Laws with disorderly conduct, a class 1 misdemeanor (Count 1); resisting arrest, a class 6 felony (Count 2); and aggravated assault, a class 5 felony (Count 3). After a five-day trial, a jury convicted Laws as charged. The superior court sentenced him as a category 3 repetitive offender to a terminal disposition on Count 1, a presumptive term of 3.75 years' imprisonment on Count 2, and a concurrent, presumptive term of 5 years' imprisonment on Count 3. Laws timely appealed.

## DISCUSSION

### I.        Constitutional Right to Notice

¶6        Laws asserts the superior court impermissibly amended the indictment through its jury instruction on the resisting-arrest charge.  He argues the instruction violated due process by changing the charge against him without proper notice.

¶7        In relevant part, A.R.S. § 13-2508 provides:

A. A person commits resisting arrest by intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by:

1. Using or threatening to use physical force against the peace officer or another.

2. Using any other means creating a substantial risk of causing physical injury to the peace officer or another.

The resisting-arrest charge in the indictment generally cited A.R.S. § 13-2508 without referencing a subsection. The language describing the offense, however, tracked only subsection (A)(1).

¶8        During the settling of final jury instructions, Laws objected to the superior court's proposal to instruct the jurors on subsection (A)(2). Representing himself, Laws argued the instruction was improper because "the indictment doesn't charge me with that. That's not what it says on the indictment and that shouldn't be here in the instructions." The prosecutor, on the other hand, contended the jurors should be instructed on subsection

(A)(2) because the "means of resistance" involved a substantial risk of physical injury.

**¶9**        Overruling Laws' objection, the superior court noted "the instructions do have to conform to the facts of the case," and ultimately instructed the jurors on both subsections. During closing argument, the prosecutor cited Laws' refusal to listen to the officers' commands, his attempts to physically evade restraint, and the injuries he inflicted on the officer's hand as sufficient evidence to support a conviction for resisting arrest. In addition, the prosecutor argued that Laws had endangered the officer's safety by resisting arrest in an intersection.

**¶10**        As an initial matter, the State contends Laws did not adequately preserve the constitutional issue he raises on appeal, asserting he objected only to the form of the jury instruction. Although Laws did not explicitly use the terms "notice" or "due process" in making his objection, his explanation provided the superior court with the opportunity to correct a possible notice error, thereby preserving the issue for appeal. *See State v. Foshay*, 239 Ariz. 271, 277, ¶ 27 (App. 2016). We therefore review his constitutional challenge de novo. *See State v. Dann*, 220 Ariz. 351, 360, ¶ 27 (2009).

**¶11**        As guaranteed by the Sixth Amendment, a criminal defendant has the right to notice of the nature of the charges against him to enable him to prepare a defense. *See State v. Sanders*, 205 Ariz. 208, 213, ¶ 16 (App. 2003), *overruled in part on other grounds by State v. Freeney*, 223 Ariz. 110, 113–15, ¶¶ 21–28 (2009). Accordingly, a charging document must be "a plain, concise statement of the facts sufficiently definite to inform the defendant of a charged offense." Ariz. R. Crim. P. ("Rule") 13.1(a). To determine whether a defendant received constitutionally sufficient notice, we examine "whether the defendant had actual notice of the charges, from either the indictment or other sources." *Freeney*, 223 Ariz. at 115, ¶ 29. A defendant who "does not receive constitutionally adequate notice of the charges against him" is "necessarily and actually prejudiced." *Id.* at 114, ¶ 26.

**¶12**        An indictment "limits the trial to the specific charge or charges" alleged, but the charging document is "deemed amended to conform to the evidence admitted during any court proceeding." Rule 13.5(b). Absent the defendant's consent, "a charge may be amended only to correct mistakes of fact or remedy formal or technical defects." *Id.* A defect is formal or technical "when its amendment does not operate to change the

nature of the offense charged or to prejudice the defendant in any way." *State v. Johnson*, 198 Ariz. 245, 247, ¶ 5 (App. 2000).

**¶13**       Citing *Freeney*, Laws contends the jury instruction on subsection (A)(2) deprived him of constitutionally sufficient notice because the instruction effectively changed the nature of the offense. But his reliance on *Freeney* is misplaced.

**¶14**       In *Freeney*, the prosecution "moved to amend the indictment on the first day of trial to change the theory" of the charged assault. 223 Ariz. at 111, ¶ 1. Our supreme court concluded that amending the assault charge violated Rule 13.5(b) because "the amendment changed the nature of the offense." *Id*. at 115–16, ¶ 31. However, the supreme court rejected the defendant's argument that the amendment violated his constitutional right to notice. *Id*. at 115, ¶¶ 29–30.

**¶15**       In finding a procedural violation, the supreme court reasoned, "[w]hen the elements of one offense materially differ from those of another – even if the two are defined in subsections of the same statute – they are distinct and separate crimes." *Id*. at 113, ¶ 16. The supreme court further held that a violation of Rule 13.5(b) is subject to harmless error review and determined that the superior court's error was harmless beyond a reasonable doubt. *Id*. at 111, 114–16, ¶¶ 2, 25–26, 31 (violating Rule 13.5(b) does not "necessarily equate to an infringement of a defendant's Sixth Amendment rights").

**¶16**       Unlike the assault statute in *Freeney*, the subsections of the resisting-arrest statute do not define materially different offenses. Our supreme court has explained that the subsections of A.R.S. § 13-2508(A) set forth the "various ways to resist a single arrest," and the statute "may be reasonably read as defining the offense as intentionally preventing or attempting to prevent an arrest." *State v. Jurden*, 239 Ariz. 526, 530, ¶ 16 (2016); *see State v. Lee*, 217 Ariz. 514, 518, ¶ 15 (App. 2008) (stating a person commits resisting arrest "if either (A)(1) or (A)(2) is satisfied"). The supreme court further held that the statute "describes an event-directed unit of prosecution that prohibits multiple convictions and punishments for resisting arrest when, as here, the counts stem from one, uninterrupted event." *Jurden*, 239 Ariz. at 530, ¶ 17. Although the supreme court addressed a different issue in *Jurden*, whether A.R.S. § 13-2508 allows a separate charge for "each officer resisted," the court's description of the statute is compelling for our purposes here. *Id*. at 527–28, 530, 532, ¶¶ 3, 16, 26.

¶17 Section 13-2508(A) addresses a single harm of intentionally preventing or attempting to prevent an arrest in defiance of state authority. The three subsections merely provide alternative ways in which the crime may be committed. *Id.* at 530–31, ¶¶ 16–21. By contrast, "[t]he three types of assault are distinct offenses with different elements, not merely different manners of committing the same offense," *State v. Waller*, 235 Ariz. 479, 488, ¶ 29 (App. 2014), with each subsection addressing a different type of harm, *see* A.R.S. § 13-1203. *See State v. Paredes-Solano,* 223 Ariz. 284, 289, ¶ 14 n.6 (App. 2009) (distinguishing unitary offenses from the subsections of the assault statute, which define different crimes).

¶18 Because A.R.S. § 13-2508(A) identifies a single offense with three different means of commission, the State was not required to specify a specific subsection in the indictment. *See State v. Kalauli*, 243 Ariz. 521, 525–26, ¶¶ 11–13 (App. 2018) (explaining a charging document need not specify a subsection when charging a unitary crime). Therefore, the indictment's general citation to A.R.S. § 13-2508 provided Laws constitutionally sufficient notice that the State could attempt to prove he violated either subsection (A)(1) or (A)(2). *See id.* A more specific pleading was not required to charge a violation of the statute's subsections, given that the subsections do not create separate and distinct crimes. *See id.*; *State v. Winter*, 146 Ariz. 461, 464 (App. 1985) ("[A] general citation of the theft statute in the indictment suffices to charge a violation of its subparts" because theft is a unitary crime), *abrogated on other grounds by State v. Kamai*, 184 Ariz. 620, 623 (App. 1996).

¶19 In addition, and even assuming A.R.S. § 13-2508(A) does not create a unitary offense that may be committed by alternative means, Laws' Sixth Amendment rights were not violated because he had sufficient notice that he could be convicted under either subsection of the statute. *See Freeney*, 223 Ariz. at 115, ¶¶ 29–30. In its pretrial disclosures, the State gave Laws notice that it would use evidence that his altercation with the police occurred in an intersection to prove he resisted arrest. *See id.* (citing pretrial disclosures as a proper source of notice). And the trial evidence included videos from the officers' body cameras as well as a police-car camera that showed Laws' conduct in the intersection. This provided Laws with sufficient notice that he was being prosecuted for a violation of subsection (A)(2). *See id.*

¶20 Furthermore, Laws did not object when the superior court instructed the jurors on both subsections (A)(1) and (A)(2) in the preliminary jury instructions. *See Johnson*, 198 Ariz. at 249, ¶ 13 ("To be meaningful, an ample opportunity to prepare to defend against amended

charges generally must occur before the state has rested its case."). After the court read the preliminary instructions, the prosecutor recited, without objection, the elements of both subsections in his opening statement. Likewise, Laws did not object, or otherwise raise the notice issue, when an officer later testified that she parked her car in the street to protect Laws and the officers from oncoming traffic. *Id.*

¶21 In light of the preliminary instructions, opening statement, and officer testimony, Laws knew, well before the State rested its case, the factual allegations that supported a charge under subsection (A)(2), and he had a fair opportunity to prepare his defense and address those facts. *Id.*; *see State v. Eastlack*, 180 Ariz. 243, 258 (1994) ("Defendant is entitled to notice of the crimes with which he may be convicted, not the manner in which the state will prove his guilt."). Accordingly, Laws received constitutionally adequate notice of the resisting-arrest charge under both (A)(1) and (A)(2). *See Freeney*, 223 Ariz. at 113, 115, ¶¶ 16–19, 29–31.

¶22 Laws' sole defense to the resisting-arrest charge was that he complied with the officer's commands and repeatedly told the officers he was not resisting arrest. In closing argument, after discussing both resisting-arrest subsections, Laws summarized his defense to the jurors, "I never actually resisted arrest. I had my hands up." Given his defense strategy, Laws failed to demonstrate prejudice from any purported error under Rule 13.5(b). *See id.* at 114–16, ¶¶ 25–31.

¶23 Nonetheless, Laws contends the instruction prejudiced him because he would have investigated the factual allegations supporting subsection (A)(2) differently or filed pretrial motions to attack the charge, had he received sufficient notice. But he offers only speculation that the amendment affected his preparation, strategy, or examination of witnesses. In his defense, he denied attempting to prevent his arrest under any theory, despite the controverting video-recordings of the incident. *See Freeney*, 223 Ariz. at 115, ¶ 28 (noting the defendant's "all or nothing" defense "did not change as a result of the amended charge"). Laws, as a result, has failed to satisfy his burden to show actual prejudice from the alleged Rule 13.5(b) violation. *See id.*; *Johnson*, 198 Ariz. at 248, ¶ 8.

## II. Presentence Incarceration Credit

¶24 Laws next argues the superior court fundamentally erred by failing to grant him an additional 12 days of presentence incarceration credit. The State confesses error, and we agree. *See* A.R.S. § 13-712(B); *State v. Cofield*, 210 Ariz. 84, 86, ¶ 10 (App. 2005) (failing to award credit for

presence incarceration is fundamental error). The record reflects the superior court did not include time Laws spent in custody from September 4 to September 17 after the sentencing hearing was rescheduled, resulting in an improper calculation of 288 days of credit.

**¶25**    Accordingly, we modify the sentences on Count 2 and Count 3 to reflect a total of 300 days of presence incarceration credit. *See* A.R.S. § 13-4037(A) (authorizing correction of sentence on appeal); *see also* Rule 31.19(c) (permitting appellate court to order modification of lower court's action); *State v. Stevens*, 173 Ariz. 494, 496 (App. 1992) (modifying sentence to amend presence incarceration credit without remand).

## CONCLUSION

**¶26**    For the foregoing reasons, we affirm the convictions and sentences as modified.



AMY M. WOOD • Clerk of the Court
FILED:    AA