NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

EDUARDO JESUS MELENDEZ, *Appellant.*

No. 1 CA-CR 24-0442

FILED 03-03-2026

Appeal from the Superior Court in Maricopa County
No. CR2021-001459-001
The Honorable Kerstin G. LeMaire, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Ramos Law Firm, Scottsdale
By Paul A. Ramos
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**P A T O N**, Judge:

**¶1**　　　　Eduardo Jesus Melendez appeals from his convictions and sentences for child sex trafficking, aggravated luring a minor for sexual exploitation, attempted sexual conduct with a minor, and attempted money laundering.  We affirm in part and vacate in part.

### FACTS AND PROCEDURAL HISTORY

**¶2**　　　　We view the facts in the light most favorable to sustaining the verdicts.  *State v. Mendoza*, 248 Ariz. 6, 11 n.1 (App. 2019).  In October 2019, a high school student, Denise,[1] was walking to a park when Melendez approached her and asked for her phone number.  She gave it to him, believing it was the best way to get Melendez to leave her alone.  Over the next several months, Melendez texted her asking, among other things, if she wanted to make $300 and introduce him "twu neiborhood freaks and sluts."

**¶3**　　　　In February 2021, Denise reported the text messages to a school resource officer who shared the information with a Phoenix Police Department detective.  After interviewing Denise, the detective began texting Melendez as Denise's fictitious friend, "Ashley."

**¶4**　　　　Ashley asked Melendez if he was still giving jobs to girls.  He said yes and asked for her picture.  He also told Ashley he had a job paying $100 for "modeling in women's wear" and asked for a picture of her from the waist down to see if she "got the right stuff."  Ashley sent a staged picture in a classroom setting in response.  Melendez then sent a text identifying himself as Eduardo.

**¶5**　　　　After Melendez asked Ashley if she would model "panties" for him, she responded, "[l]ol . . . im only 14.  Don't know how I wud look

---

[1] We use pseudonyms to protect victim and witness identities.  Ariz. R. Sup. Ct. 111(i).

in women['s] panties." Ten minutes later, Melendez texted Ashley asking if she was interested in filming an adult movie for $200. When she asked what she would have to do, Melendez replied, "X rated you [k]now," and "X rated means strong sexual content." Melendez then sent Ashley two pictures of nude men with erect penises, whom he claimed were actors Ashley could work with. Ashley agreed to film the video and asked if they could meet after school.

¶6 Melendez responded by asking Ashley what school she attended and when she got out for the day. She replied with the name of her school and that she got out at 3:30 p.m. They eventually agreed to meet about an hour later at a specified location. Melendez said he would be in a white Crown Victoria and Ashley said she would be wearing a black shirt.

¶7 Melendez arrived at the meet-up location in the white Crown Victoria and was arrested. After his arrest, the police sent two text messages to the phone they had been messaging with as Ashley and text notifications appeared on Melendez's phone both times. While searching Melendez, officers discovered he was wearing a penis pump, which is "a device that . . . enlarges the penis before sex." When police searched Melendez's wallet, they discovered two $100 bills segregated from the other cash in his wallet.

¶8 The State indicted Melendez on one count of attempted child sex trafficking, one count of child sex trafficking, two counts of aggravated luring a minor for sexual exploitation, one count of attempted sexual conduct with a minor, and one count of attempted money laundering.

¶9 During a five-day trial, the jury heard testimony from Denise, Melendez, and Phoenix Police officers. Transcripts of the text messages sent between Melendez, Denise, and Ashley were admitted into evidence, along with the two $100 bills and bodycam footage of Melendez's arrest.

¶10 The jury acquitted Melendez of attempted child sex trafficking (Count 1). It convicted Melendez on one count of child sex trafficking (Count 2), two counts of aggravated luring a minor for sexual exploitation (Counts 3 and 4), one count of attempted sexual conduct with a minor (Count 5), and one count of attempted money laundering (Count 6). The court sentenced Melendez to consecutive prison terms of 20 years for Count 2, 17 years for Count 3, and 2.5 years for Count 6, with 271 days of presentence incarceration credit. He was placed on lifetime probation for Counts 4 and 5.

¶11        Melendez timely appealed.   We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

### I.        Substantial evidence supports Melendez's convictions.

¶12        Melendez argues his convictions were not supported by sufficient evidence.  We review claims of insufficient evidence de novo but view the facts in the light most favorable to upholding the verdict.  *State v. Bible*, 175 Ariz. 549, 595 (1993).   We reverse convictions for insufficient evidence "only if no substantial evidence supports the conviction." *State v. Allen*, 235 Ariz. 72, 75, ¶ 6 (App. 2014) (citation omitted).   Substantial evidence is what "reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt."  *State v. Teagle*, 217 Ariz. 17, 27, ¶ 40 (App. 2007) (citation omitted).  We test the evidence "against the statutorily required elements of the offense."  *State v. Dodd*, 244 Ariz. 182, 185, ¶ 8 (App. 2017) (citation omitted).  Proof of a defendant's mental state may be inferred by the jury from the "behaviors and other circumstances surrounding the event."  *State v. Noriega*, 187 Ariz. 282, 286 (App. 1996).

### A.        Substantial evidence supports Melendez's conviction for child sex trafficking.

¶13        To convict Melendez of child sex trafficking, the State had to prove that Melendez knowingly caused a minor to engage in prostitution. A.R.S. § 13-3212(A)(1).   Prostitution means "engaging in or agreeing or offering to engage in sexual conduct under a fee arrangement with any person for money or any other valuable consideration."  A.R.S. § 13-3211(5). It is not a defense "that the other person is a peace officer posing as a minor, a person assisting a peace officer posing as a minor or a peace officer posing as a person facilitating the prostitution of a minor."  A.R.S. § 13-3212(C).

¶14        The jury heard testimony that Ashley told Melendez she was 14 years old and saw text messages admitted in evidence where Ashley told Melendez she was 14 years old.  The jury also saw text messages admitted in evidence where Melendez asked Ashley to have sex on camera for $200, and she agreed to do so.   Additionally, the detective pretending to be Ashley testified that Ashley agreed to have sex in exchange for $200. Substantial evidence supports Melendez's conviction for child sex trafficking.

### B.    Substantial evidence supports Melendez's conviction for aggravated luring a minor for sexual exploitation.

**¶15**        Melendez was convicted of two counts of aggravated luring, but, as discussed in section III *infra*, we vacate one of the convictions (Count 4).  Thus, we solely address the sufficiency of the evidence on Count 3.  To convict Melendez of aggravated luring a minor for sexual exploitation, the State had to prove that Melendez:

> 1. Knowing the character and content of the depiction, uses an electronic communication device to transmit at least one visual depiction of material that is harmful to minors for the purpose of initiating or engaging in communication with a recipient who the person knows or has reason to know is a minor.

> [and]

> 2. By means of the communication, offers or solicits sexual conduct with the minor. The offer or solicitation may occur before, contemporaneously with, after or as an integrated part of the transmission of the visual depiction.

A.R.S. § 13-3560(A)(1)-(2).  An image is "harmful to minors" if it "[a]ppeals to the prurient interest, when taken as a whole;" "portrays the . . . representation in a patently offensive way;" and taken as a whole has no "serious literary, artistic, political, or scientific value for minors."  A.R.S. § 13-3501(1)(a)-(b).  It is not a defense "that the other person is not a minor or that the other person is a peace officer posing as a minor."  A.R.S. § 13-3560(B).

**¶16**        The jury heard testimony and saw text messages admitted in evidence wherein Ashley informed Melendez she was 14 years old.  The jury also saw two images, sent via text message, from Melendez to Ashley, depicting two men with erect penises.  And the text messages were sent as part of an offer by Melendez to Ashley to have sex on camera for $200.  This is substantial evidence of aggravated luring of a minor for sexual exploitation.

### C.    Substantial evidence supports Melendez's conviction for attempted sexual conduct with a minor.

**¶17**        To convict Melendez of attempted sexual conduct with a minor, the State had to prove that Melendez knowingly or intentionally

attempted to "engag[e] in sexual intercourse or oral sexual contact with any person who is under eighteen years of age." A.R.S. § 13-1405(A). "Attempt" includes taking a step in a course of conduct intended to result in the commission of a crime. A.R.S. § 13-1001(A)(2).

¶18        The jury heard testimony and saw text messages admitted in evidence wherein Ashley told Melendez she was 14 years old. And Phoenix Police officers testified that Melendez went to the location where he and Ashley agreed to meet. When Melendez was searched incident to his arrest, he was wearing a penis pump, which is used to enlarge the penis before having sex. Melendez also had a phone with him that matched the phone number Ashley had been texting and the officers' "test" text messages from Ashley's phone arrived in real time on Melendez's phone after his arrest. Substantial evidence supports Melendez's conviction for attempted sexual conduct with a minor.

### D.        Substantial evidence supports Melendez's conviction for attempted money laundering.

¶19        To convict Melendez of attempted money laundering, the State had to prove that Melendez "ma[de] property available to another by transaction, transportation, or otherwise knowing that it is intended to be used to facilitate racketeering." A.R.S. § 13-2317(B)(2). Racketeering includes prostitution. *See* A.R.S. § 13-2317(G)(3)(c) (incorporating A.R.S. § 13-2301(D)(4)(xxiii)). "Attempt" includes taking a step in a course of conduct intended to result in the commission of a crime. A.R.S. § 13-1001(A)(2).

¶20        Melendez and Ashley agreed that she would have sex on camera for $200. Melendez went to the agreed-upon location in the car he said he would be in. When the police searched his wallet, they found two $100 bills (the agreed-upon payment) segregated from the rest of his cash. Substantial evidence supports Melendez's attempted money laundering conviction.

### II.        The superior court properly applied the dangerous crimes against children sentencing scheme in its imposition of sentence for Melendez's aggravated luring conviction.

¶21        Melendez was sentenced to an enhanced 17-year sentence for one of his aggravated luring convictions under the dangerous crimes against children ("DCAC") sentencing scheme. Melendez does not argue his sentence was illegally enhanced under this scheme, but in its Answering Brief, the State called our attention to *State v. Marner*, 258 Ariz. 512 (App.

2024), as arguably impacting Melendez's sentences. In *Marner*, we held that luring offenses under Section 13-3554 involving fictitious minors, such as in this case, are not subject to DCAC sentencing enhancements. 258 Ariz. at 519, ¶ 23. Although Melendez was convicted of aggravated luring under Section 13-3560, the State contends that the analysis for aggravated luring is comparable to that of simple luring. The State, however, disagrees with the majority's holding in *Marner* and argues that luring and aggravated luring sentences may be enhanced under the DCAC sentencing scheme even when the offenses involve a fictitious minor.

**¶22** We note that Melendez failed to raise this issue by not objecting at sentencing, raising it in his opening brief, or addressing it in a reply brief after the State raised it in its answering brief. *See State v. Vargas*, 249 Ariz. 186, 190, ¶ 13 (2020) (citing *State v. Carver*, 160 Ariz. 167, 175 (1989) ("Failure to argue a claim usually constitutes abandonment and waiver of that claim.")). But as discussed below, Melendez has not shown prejudicial, fundamental error. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).

**¶23** At the time of briefing here, review of *Marner* was pending in the Arizona Supreme Court. *See State v. Marner*, No. CR-24-0300-PR. We stayed this appeal pending our supreme court's ruling in that case. The supreme court has since vacated this court's decision in *Marner*. *See State v. Marner*, 167 Ariz. Cases Dig. 11, ¶ 47 (2026). The court held that luring does not require that an actual minor be the luring victim in order for a DCAC enhancement to apply. *Id.* It reasoned that by listing luring as a DCAC offense, the legislature shifted the focus from actual harm to a child to the risk created by luring children as a class, criminalizing conduct at the solicitation stage. *Id.* at ¶ 46. Given that the statutes for both simple and aggravated luring contain the same language providing that "if the minor is under fifteen years of age [simple or aggravated luring] is punishable pursuant to § 13-705," *compare* A.R.S. § 13-3554(C) (simple) *with* A.R.S. § 13-3560(C) (aggravated), *Marner's* analysis for simple luring presumably applies to aggravated luring. Melendez has shown no error, let alone fundamental, prejudicial error.

### III. Melendez's two aggravated luring convictions and sentences violated his right against double jeopardy.

**¶24** The State submits that Melendez's convictions and sentences for aggravated luring a minor for sexual exploitation violate the Double Jeopardy Clauses of the United States and Arizona Constitutions and thus constitute fundamental, prejudicial error. Although Melendez did not raise this issue on appeal, we will not ignore fundamental error if we find it. *See*

*State v. Fernandez*, 216 Ariz. 545, 554, ¶ 32 (App. 2007). "We review issues of statutory interpretation, including a statute's allowable unit of prosecution, de novo," and "review unobjected-to violations of a statute's allowable unit of prosecution for fundamental error." *State v. Moninger*, 258 Ariz. 18, 21, ¶ 10 (2024).

**¶25**　　　　The United States and Arizona Constitutions' Double Jeopardy Clauses prohibit multiple punishments for a single criminal offense. *Romero-Millan v. Barr*, 253 Ariz. 24, 29, ¶ 20 (2022). These constitutional protections arise in two contexts. *State v. Jurden*, 239 Ariz. 526, 529, ¶ 10 (2016). As relevant here, if charged multiple times under the same statute, a person may only be convicted a single time for a single offense. *Id.* at ¶ 11. "The touchstone for whether conduct comprises a single offense is whether a series of actions violates a criminal statute in sufficiently 'separate and distinct' ways." *Moninger*, 258 Ariz. at 22, ¶ 12 (citations omitted). "Whether conduct is divisible into separate and distinct violations is informed by the scope of the relevant statute's allowable unit of prosecution." *Id.*

**¶26**　　　　In *Moninger*, our supreme court clarified the unit-of-prosecution test in the context of Arizona's criminal luring statute, Section 13-3554. *Id.* at 24, ¶¶ 25-27. Because Arizona's aggravated luring statute, Section 13-3560, contains the same operative language as Section 13-3554, we follow *Moninger's* unit-of-prosecution analysis.

**¶27**　　　　The unit-of-prosecution analysis involves two steps. The first step is identifying the object of statutorily prohibited action. *Id.* at 24, ¶ 26. Here, Section 13-3560's object of prohibited action is sexual conduct and is victim-based. *See id.* A series of offers or solicitations involving separate and distinct types of conduct or victims may constitute multiple crimes under Section 13-3560. *See id.*

**¶28**　　　　"The second step is applying a totality approach to determine whether a series of actions involving the same objects are sufficiently separate and distinct to violate the same statute multiple times." *Id.* at ¶ 27. In considering this totality approach, courts consider factors such as time, location, and intervening occurrences. *Id.* Here, a series of offers or solicitations involving only one type of sexual conduct and one victim may nevertheless violate Section 13-3560 multiple times if the series of actions: "(1) encompasses significant temporal gaps between communications; (2) occurs at, or contemplates, separate geographical locations; or (3) is interrupted by intervening occurrences that serve to 'reset' communications with a victim." *Id.*

**¶29** Melendez's aggravated luring convictions were based on two images of naked men that Melendez sent to Ashley within minutes of each other to persuade her to have sex on camera. Although the images represent two separate visual depictions of material harmful to minors, *see* A.R.S. § 13-3560, they were not defined by separate and distinct sexual conduct or victims. The images were sent as part of a single offer to a single victim and the solicited act was meant to occur at a single geographic location. The images were also sent within minutes of one another as part of a continuous text interaction between Melendez and Ashley. After considering these circumstances in light of *Moninger*, Melendez's actions do not amount to two violations of Section 13-3560.

**¶30** Melendez's convictions and sentences for two counts of aggravated luring thus violate double jeopardy and amount to fundamental, reversible error. *See Moninger*, 258 Ariz. at 25, ¶ 35 ("[C]onvictions that violate double jeopardy constitute fundamental, reversible error[.]"). We therefore vacate Melendez's conviction and resulting probation grant for the second count of aggravated luring (Count 4).

## CONCLUSION

**¶31** We affirm Melendez's convictions and sentences for child sex trafficking (Count 2), aggravated luring a minor for sexual exploitation (Count 3), attempted sexual conduct with a minor (Count 5), and attempted money laundering (Count 6), but vacate Melendez's second conviction and resulting probation grant for aggravated luring a minor for sexual exploitation (Count 4).



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:      JR

9