IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**KEVIN HARRY MONINGER,**
*Appellant.*

---

No. CR-21-0239-PR
Filed July 24, 2024

---

Appeal from the Superior Court in Mohave County
The Honorable Derek C. Carlisle, Judge
No. S8015CR201801598
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
251 Ariz. 487 (App. 2021)
**VACATED**

---

COUNSEL:

Kristin K. Mayes, Arizona Attorney General, Joshua Bendor, Solicitor General, Casey D. Ball (argued), Assistant Attorney General, Criminal Appeals Section, Phoenix, Attorneys for State of Arizona

Jill L. Evans (argued), Jill L. Evans, Attorney at Law, Flagstaff, Attorney for Kevin Harry Moninger

Megan Page, Pima County Public Defender, David J. Euchner (argued), Pima County Public Defender's Office, Attorney for Amicus Curiae Arizona Attorneys for Criminal Justice

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ and JUSTICES BRUTINEL, BOLICK, MONTGOMERY, and KING joined.

JUSTICE BEENE, Opinion of the Court:

¶1 The state may not punish a person multiple times for one criminal offense. *State v. Jurden*, 239 Ariz. 526, 529 ¶ 10 (2016). And whether an act or course of conduct is a single offense depends on a statute's "allowable unit of prosecution." *Id.* ¶ 11. If the relevant unit of prosecution is a discrete act, a series of distinct acts can beget several offenses—and several punishments. *See id.* Alternatively, if the relevant unit of prosecution is a course of conduct, a series of acts may only expose a defendant to multiple punishments if the acts, considered together, constitute multiple courses of conduct. *Id.* But for some crimes, it is not immediately apparent when an act becomes a course of conduct, or when one course of conduct ends and another begins. The crime of luring a minor for sexual exploitation, A.R.S. § 13-3554, can be such a crime.

¶2 In this case we endeavor to clarify § 13-3554's allowable unit of prosecution and the factual basis necessary to support multiple luring charges. For the following reasons, we hold that luring is based on a course of conduct defined by offers or solicitations: (1) of separate and distinct sexual conduct, or (2) to separate and distinct victims. We further hold that a series of actions only offering or soliciting one type of sexual conduct from one victim may nevertheless support multiple convictions if the actions are divisible into multiple, factually distinguishable courses of conduct. This determination depends on each case's unique facts. Factors that divide a series of actions into multiple courses of conduct under § 13-3554 include, but are not limited to, the lapse of time, contemplation of separate geographical locations, and intervening events or occurrences.

## BACKGROUND

¶3 In 2018, Kevin Moninger, a Nevada resident in his early sixties, posted two classified ads on a website intended to facilitate sexual

encounters. On September 27, he received an email response from "Sabrina." She introduced herself as a thirteen-year-old girl who lived with her mother in Kingman, Arizona. Unbeknownst to Moninger, however, Sabrina did not exist. She was merely a fictional character being played by an undercover officer as part of a sting operation.

¶4 After exchanging emails for a few days, Sabrina and Moninger began texting. They made small talk, shared photographs, and discussed being boyfriend and girlfriend. But Moninger's messages quickly became more explicit. On the morning of October 3, he told Sabrina that he would like to meet her in person and asked if he could "kiss [her] everywhere." He told Sabrina that, if they met, he would let her decide whether they were going to "cuddle," "kiss," or "make love." Moninger also discussed masturbation several times and made comments that could be understood as alluding to oral sex.

¶5 Sabrina promptly agreed to meet in person. Moninger suggested they meet the upcoming Friday, October 5. From October 3—the day Moninger first proposed an in-person meeting—to October 5, Moninger and Sabrina exchanged nearly 1,000 text messages, mostly chatting about their "relationship," and planning their upcoming rendezvous.

¶6 On the afternoon of October 5, Moninger drove to Kingman, planning to meet Sabrina. Instead, after arriving at the meeting place, he was arrested. The State charged Moninger with three counts of luring a minor under the age of fifteen for sexual exploitation and one count of attempted sexual conduct with a minor. Each luring count was supported by one day's worth of texts, starting on October 3, and each count accused Moninger of "soliciting sexual intercourse" with Sabrina. Moninger did not challenge the State's charging decisions or raise any other double jeopardy issues at trial.

¶7 A jury found Moninger guilty as charged. The superior court sentenced him to four consecutive prison terms, for a total of thirty-one years. Moninger appealed, and a divided court of appeals vacated two of his three luring convictions. *State v. Moninger*, 251 Ariz. 487, 489 ¶ 1 (App. 2021). According to the court's majority, Moninger's conduct only violated § 13-3554 once, and three convictions for one violation put him in double

jeopardy. *Id.* at 491 ¶ 7. When determining how many times Moninger had violated § 13-3554, the majority concluded that (1) the statute's proscribed behavior involved a course of conduct, *id.* at 492 ¶ 14; and (2) when this course of conduct targets only one victim, its scope could be determined using the following factors:

> the form of sexual behavior suggested; whether the defendant employed different strategies in communicating with the victim; the victim's responses to the defendant's proposals; the amount of time separating the defendant's proposals; any intervening events between the requests; and any other facts showing a new or otherwise distinct motivation or criminal impulse.

*Id.* at 498 ¶ 38. Applying these factors, the majority held that Moninger had not "engaged in separate, distinct courses of conduct." *Id.* at 499 ¶ 45. The court consequently vacated two of his luring convictions and remanded the third for resentencing. *Id.* The majority further held that, on remand, the superior court should consider Moninger's remaining luring conviction to be probation eligible. *Id.* at 502–03 ¶¶ 59–60.

¶8 The dissenting judge disagreed. *See id.* at 503 ¶ 63 (Morse, J., concurring in part and dissenting in part). He explained that "every request of a minor to engage in sexual conduct is a separate harm," and he therefore believed that Moninger could be punished for each individual request. *See id.* at 505 ¶ 68. He further stated that—even under the majority's course-of-conduct approach—Moninger had engaged in multiple, distinct courses of conduct. *Id.* at 507 ¶ 78. And finally, the dissenting judge concluded that Moninger's § 13-3554 convictions were unambiguously *not* probation eligible. *Id.* at 510 ¶ 101. Accordingly, he would have affirmed the superior court's disposition in all respects. *Id.* ¶ 103.

¶9 The State petitioned for review, which we granted because § 13-3554's allowable unit of prosecution is a recurring issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

**¶10**        We review issues of statutory interpretation, including a statute's allowable unit of prosecution, de novo. *See Jurden*, 239 Ariz. at 528 ¶ 7. We review unobjected-to violations of a statute's allowable unit of prosecution for fundamental error. *See id.*

### I.

**¶11**        We begin by clarifying Arizona's allowable-unit-of-prosecution analysis. This analysis logically divides into two segments: the first is a pure legal question, the second a mixed question of fact and law. After clarifying our allowable-unit-of-prosecution analysis, we turn to Moninger's convictions, assessing them for double jeopardy violations.

### A.

**¶12**        The United States and Arizona Constitutions' Double Jeopardy Clauses prohibit multiple punishments for a single criminal offense. *Romero-Millan v. Barr*, 253 Ariz. 24, 29 ¶ 20 (2022). This constitutional protection arises in two contexts. *Jurden*, 239 Ariz. at 529 ¶ 10. Relevant here, if charged multiple times under the same statute, a person may only be convicted a single time for a single offense. *Id.* ¶ 11. The touchstone for whether conduct comprises a single offense is whether a series of actions violates a criminal statute in sufficiently "separate and distinct" ways. *See, e.g., Blockburger v. United States*, 284 U.S. 299, 301 (1932); *State v. Via*, 146 Ariz. 108, 116 (1985); *Commonwealth v. Rabb*, 725 N.E.2d 1036, 1042–43 (Mass. 2000). Whether conduct is divisible into separate and distinct violations is informed by the scope of the relevant statute's allowable unit of prosecution. *See Jurden*, 239 Ariz. at 529 ¶ 11.

**¶13**        The legislature defines the scope of the allowable unit of prosecution. *See United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 221 (1952). The legislature sometimes leaves no doubt about what constitutes the unit of prosecution. *See, e.g.*, A.R.S. § 13-1417(D) ("A defendant may be charged with *only one count* under this section unless more than one victim is involved." (emphasis added)). More often, however, courts must determine the unit of prosecution based on a statute's syntax and grammar. *See, e.g., State v. Soza*, 249 Ariz. 13, 15 ¶¶ 8–11 (App.

2020) (analyzing a statute's syntax); *Jurden*, 239 Ariz. at 530 ¶¶ 15–16 (same). In those cases, we begin by reading the statute's text in context; if unambiguous, we apply the text as written. *See Jurden*, 239 Ariz. at 530 ¶ 15.

¶14 Here, § 13-3554 does not expressly define the allowable unit of prosecution. It tells us only that a "person commits luring a minor for sexual exploitation by offering or soliciting sexual conduct with another person knowing or having reason to know that the other person is a minor." § 13-3554(A). In this context, "offer" and "solicit" could refer to either an act or instance of presenting something, or requesting something, respectively. *See Offer*, Black's Law Dictionary (12th ed. 2024); *Solicitation*, Black's Law Dictionary (12th ed. 2024). These definitions alone do not define the unit of prosecution because they could refer to a single act or an ongoing occurrence.

¶15 But the words used by the legislature nevertheless inform us that § 13-3554 is concerned with continuing courses of conduct. As used here, "offering" and "soliciting" are present participles that contemplate a continuous pattern of behavior. *See* Univ. Chi. Press, *The Chicago Manual of Style* § 5.110 (17th ed. 2017) ("The present participle denotes the verb's action as being *in progress or incomplete at the time . . . .*" (emphasis added)). And the statute does not use language denoting discrete actions, like "for each offer" or "for each solicitation." These textual cues indicate that § 13-3554's unit of prosecution is a continuing course of conduct. The statute does not, however, precisely delineate when one course of offering or soliciting is complete, or when another begins. *Cf. Mejak v. Granville*, 212 Ariz. 555, 558 ¶ 18 (2006) (acknowledging that "the crime [of luring] is complete when a person offers or solicits sexual conduct with a minor," without defining when a separate and distinct luring crime begins).

¶16 Even so, the lack of precisely defined units of prosecution does not render this statute ambiguous. *Cf. In re Drummond*, 543 P.3d 1022, 1026 ¶ 9 (Ariz. 2024) (explaining that inconclusive definitions "do not render [a] term ambiguous"). Rather, we focus on the object of the statutorily proscribed action. *See, e.g., Jurden*, 239 Ariz. at 530 ¶ 16 (focusing on whether a statute is "event-directed or victim-directed"); *Romero-Millan*,

253 Ariz. at 29 ¶ 21 (describing a statute as being "drug-based").[1] Grammatically speaking, this action will have one or more objects. These objects will be quantifiable. This is important because considering the prohibited action in its entirety may lead to ambiguity—especially when the prohibited action is a course of conduct. Therefore, the first half of our unit-of-prosecution analysis is more narrowly focused on the object, or objects, of the prohibited action.

¶17        We identify the object of the prohibited action in three steps. The legislature invariably expresses the prohibited action using one or more verbs. *See* Univ. Chi. Press, *The Chicago Manual of Style* § 5.97 (17th ed. 2017) ("A verb shows the performance or occurrence of an action . . . ."). But to be relevant to our analysis, these verbs must describe the active component of the crime.

¶18        Our first step, then, is identifying the conduct, act, or omission that is the active component of the crime. This is the crime's "actus reus." *See Cruz v. Blair*, 255 Ariz. 335, 342 ¶ 19 (2023). Here, the conduct proscribed by § 13-3554 is "offering or soliciting sexual conduct with another person." This is the statute's actus reus.

¶19        We next look within the actus reus to identify the verbs used by the legislature. It is important to focus only on the statute's actus reus because a statute's other verbs are not relevant to our unit-of-prosecution analysis. Here, § 13-3554's actus reus contains two verbs: "offering" and "soliciting." Therefore, the action proscribed by § 13-3554 is "offering or soliciting."

¶20        Third, and finally, we identify the object(s) of these verbs. We do this by asking *what*, *who*, *for what*, *to whom*, or *from whom* the proscribed action is concerned with or directed toward. Here, because a person may not offer or solicit sexual conduct with another person, the action of

---

[1] We note that this approach is consistent with other jurisdictions' textual analysis of a statute's allowable unit of prosecution. *See, e.g.*, *State v. Donaldson*, 557 S.W.3d 33, 43–44 (Tex. App. 2017) (focusing on "the subject, the main verb . . . and the direct object"); *State v. Ramirez*, 409 P.3d 902, 916 (N.M. 2017) (focusing on the "direct object that is the recipient of the actions of [the statute's] verbs"); *Wozniak v. State*, No. 58374, 2013 WL 690860, at *2 (2013) (focusing on "the object of [the statute's] verbs").

"offering or soliciting" directly concerns "sexual conduct" and indirectly concerns "another person." In other words, a person may not solicit sexual conduct (i.e., *what*) from another person (i.e., *from whom*). Indeed, without these objects the crime of luring would be indefinite because, as used in § 13-3554, "offering" and "soliciting" are transitive verbs that "require[] an object to express a complete thought."[2] *See* Univ. Chi. Press, *The Chicago Manual of Style* § 5.98 (17th ed. 2017). Thus, "sexual conduct" and "another person" are the objects of § 13-3554's proscribed action.

**¶21** Having identified the objects of § 13-3554's prohibited action, it becomes clear that the legislature based the statute's allowable unit of prosecution on sexual conduct and other persons. Accordingly, § 13-3554's allowable unit of prosecution may be determined by (1) the different types of sexual conduct offered or solicited and (2) the number of other persons—i.e., victims—to whom the offers or solicitations were directed. This means that § 13-3554 has been violated multiple times when (1) different types of sexual conduct are offered or solicited or (2) offers or solicitations are directed at more than one victim.

**¶22** In addition to being firmly rooted in the statutory text, determining § 13-3554's unit of prosecution using a sexual-conduct- and victim-based approach avoids absurd conclusions. *See generally State ex rel. Montgomery v. Harris*, 237 Ariz. 98, 101 ¶ 13 (2014) ("Statutes should be construed sensibly to avoid reaching an absurd conclusion."). For example, if—as the State proposes—every new comment was a separate offense, a request for sexual conduct followed by "please, please, please" could amount to four crimes. Taken to its logical conclusion, this proposition suggests that Moninger violated § 13-3554 dozens of times between October 3 and October 5. We do not believe the statute's language or obvious purpose support such a result. We therefore do not interpret § 13-3554 in a manner that permits a luring conviction for every comment and communication in an otherwise single course of conduct.

**¶23** Accordingly, we hold that, as a matter of law, § 13-3554's unit of prosecution is defined by separate and distinct (1) types of sexual

---

[2] Though some jurisdictions focus solely on a transitive verb's *direct* object, *see, e.g.*, *Ramirez*, 409 P.3d at 916, we decline to adopt this narrow focus here. The direct and indirect objects of offering and soliciting are both relevant to § 13-3554's allowable unit of prosecution.

conduct and (2) victims. But our analysis does not end here, because a series of actions soliciting one type of sexual conduct from one victim may nevertheless support multiple convictions if the actions are otherwise divisible into multiple, factually distinguishable courses of conduct.

**B.**

¶24 We commence the second half of our unit-of-prosecution analysis by identifying factors that cause a series of related actions to comprise multiple offenses. In previous cases, we addressed this mixed question of fact and law by considering the totality of the circumstances. *See Via*, 146 Ariz. at 116 (considering circumstances like time, location, the number of victims, and the defendant's intentions). The court of appeals correctly used the totality approach in this case, *see Moninger*, 251 Ariz. at 498 ¶ 38, and this approach is consistently used by other jurisdictions. *See, e.g.*, *Ramirez*, 409 P.3d at 917–18; *State v. Ross*, 845 N.W.2d 692, 705–06 (Iowa 2014); *State v. Schoonover*, 133 P.3d 48, 79–80 (Kan. 2006).

¶25 Accordingly, we expressly adopt a totality-of-the-circumstances approach to determine whether a series of actions concerned with the same object(s) may be divided into multiple courses of conduct. In other words, we must consider the totality of the circumstances here to determine whether a series of actions concerning only one type of sexual conduct and one victim is divisible into multiple courses of conduct that separately violate § 13-3554.[3] Three factors are relevant here: (1) the lapse of time, (2) the geographic locations involved, and (3) whether an intervening occurrence has interrupted or materially altered ongoing communications. Intervening occurrences may include variations in a victim's responses, escalations in communications, or other situations that objectively indicate a factually and materially distinguishable criminal impulse.

¶26 In sum, an allowable-unit-of-prosecution analysis proceeds in two broad steps. The first step is identifying the object—or objects—of the statutorily prohibited action. *See* Part I(A), ¶¶ 17–20. A series of actions that involves factually separate and distinct object(s) will violate a statute

---

[3] To be clear, series of actions concerning multiple types of sexual conduct or victims violate § 13-3554 multiple times—regardless of other, related circumstances. *See* Part I(A).

multiple times. Here, § 13-3554 is sexual-conduct- and victim-based. This means that a series of offers or solicitations involving factually separate and distinct types of sexual conduct or victims will *always* violate § 13-3554 multiple times.

¶27 The second step is applying a totality approach to determine whether a series of actions involving the same objects are sufficiently separate and distinct to violate the same statute multiple times. *See* Part I(B), ¶¶ 24–25. Courts should consider non-exhaustive factors like time, location, and intervening occurrences. Here, a series of offers or solicitations involving only one type of sexual conduct and one victim may nevertheless violate § 13-3554 multiple times if the series of actions: (1) encompasses significant temporal gaps between communications; (2) occurs at, or contemplates, separate geographical locations; or (3) is interrupted by intervening occurrences that serve to "reset" communications with a victim.

## C.

¶28 Having clarified our unit-of-prosecution test, we now apply the test to Moninger's convictions.

¶29 To pass constitutional muster under the first half of our unit-of-prosecution analysis, Moninger's three luring convictions must be supported by three separate and distinct courses of conduct based on distinguishable types of sexual conduct or victims. Here, it is undisputed that Sabrina is the only victim. But it is less clear whether Moninger's interactions with Sabrina include offers or solicitations of factually separate and distinct sexual conduct.

¶30 For purposes of luring,

"Sexual conduct" means actual or simulated:

(a) Sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal, whether between persons of the same or opposite sex.
(b) Penetration of the vagina or rectum by any object except when done as part of a recognized medical procedure.
(c) Sexual bestiality.

(d)     Masturbation, for the purpose of sexual stimulation of the viewer.
(e)     Sadomasochistic abuse for the purpose of sexual stimulation of the viewer.
(f)     Defecation or urination for the purpose of sexual stimulation of the viewer.

A.R.S. § 13-3551(10).

**¶31**     Considering these definitions, Moninger's communications implicate multiple types of sexual conduct. The record contains communications regarding genital-to-genital sex, masturbation, and, possibly, oral sex. The legislature listed these separately in § 13-3551. *See* § 13-3551(10)(a), (d). Thus, if the State identified a sufficient factual basis to support separate counts for offering or soliciting (1) genital-genital intercourse, (2) masturbation, and (3) oral-genital intercourse with Sabrina, three separate luring counts may be constitutionally permissible. But the State did not charge Moninger in this way.

**¶32**     Though the record suggests that the State could have based three luring counts on three factually distinct types of sexual conduct, the State instead chose to charge Moninger with three day-based counts of "soliciting sexual intercourse" over the course of three consecutive days. But nothing in § 13-3554 suggests a day-based unit of prosecution. Rather, the statute is sexual-conduct- and victim-based. Thus, Moninger's communications with Sabrina only appear to support one of the State's luring counts when scrutinized under the first half of our unit-of-prosecution analysis.

**¶33**     Moving to the second half of our unit-of-prosecution analysis, we consider the totality of the circumstances, focusing on time, location, and intervening occurrences. And here, the record is devoid of facts dividing Moninger's actions into separate and distinct courses of conduct for each day. Moninger did not cease soliciting intercourse only to recommence after a lengthy delay. His offers and solicitations never appeared to contemplate sex acts occurring in multiple geographical locations. And Sabrina agreed to Moninger's offers and solicitations from the outset, never vacillating or otherwise interrupting his course of conduct.

As a result, nothing occurred to reset Moninger's communications with Sabrina or divide his actions into factually distinct courses of conduct.

¶34        Having analyzed the relevant factors under the second half of our unit-of-prosecution analysis, we conclude that Moninger's three separate charges—and by extension, his convictions—are not supported by three separate and distinct violations of the same statute. Rather, all three are based on one continuous course of conduct: soliciting one type of sexual conduct from one victim on three successive days. And subjecting Moninger to three separate convictions for one violation of § 13-3554 puts him in double jeopardy.

¶35        Because convictions that violate double jeopardy constitute fundamental, reversible error, *see Jurden*, 239 Ariz. at 528 ¶ 7, Moninger's three luring convictions cannot stand simultaneously. We, therefore, affirm the court of appeals' holding vacating Moninger's second and third luring convictions—counts two and three. We also vacate the sentence imposed for count one, Moninger's first luring conviction, and remand to the trial court for resentencing. *Cf. State v. Garza*, 192 Ariz. 171, 176 ¶ 17 (1998) (remanding a case for resentencing when the record is unclear whether a sentencing court would have imposed the same sentence absent improper factors).

## II.

¶36        We next turn to whether a luring conviction was probation eligible under A.R.S. § 13-705(H) (2018)—the statute in effect at the time of Moninger's sentencing—because the issue is likely to arise on remand. *See State v. Rushing*, 243 Ariz. 212, 224 ¶ 50 (2017).

¶37        The legislature classifies certain offenses as dangerous crimes against children ("DCAC") when the victim is younger than fifteen. Luring a minor for sexual exploitation is one of these offenses. § 13-705(Q)(1)(s) (2018). "A dangerous crime against children is in the first degree if it is a completed offense . . . ." § 13-705(O) (2018). And luring is a completed offense when § 13-3554's elements are met, notwithstanding the crime's anticipatory nature. *Mejak*, 212 Ariz. at 558 ¶ 18.

¶38        The legislature also specifies what offenses are probation eligible. For example, at the time of Moninger's sentencing, individuals

convicted of DCAC offenses involving sexual abuse and bestiality were generally eligible for probation. § 13-705(F), (H), (Q)(2) (2018). Other first-degree DCAC offenses, however, were unambiguously ineligible for probation. § 13-705(H) (2018) (instructing courts that, except for sexual abuse and bestiality "a person who is sentenced for a dangerous crime against children in the first degree pursuant to this section is not eligible for . . . probation"). Relevant here, the legislature implicitly authorized probation for *second-degree* luring charges in § 13-705(E) by suggesting that imprisonment is not mandatory. *See id.* (2018) ("*if* a person . . . [convicted of luring] is sentenced to a term of imprisonment" (emphasis added)). But subsection (E)'s authorization did not apply to first-degree luring sentences because the legislature provided otherwise in subsection (H). *See* § 13-705(E) (2018) (explaining that subsection (E) applies "[e]xcept as otherwise provided in this section").

¶39 This case deals with a completed luring offense. Moninger was not convicted of *attempted* luring, *conspiracy* to commit luring, or any other preparatory offense. A jury convicted him of completed luring of a minor under the age of fifteen. This is a first-degree DCAC offense, which, under § 13-705(H) (2018), is explicitly ineligible for probation.[4] Accordingly, Moninger's remaining luring conviction is not probation eligible.

## CONCLUSION

¶40 For the foregoing reasons, we vacate the court of appeals' opinion and Moninger's second and third luring convictions—counts two and three of the indictment—and the resulting sentences. We vacate the sentence imposed for count one and remand to the trial court for resentencing.

---

[4] In the court of appeals, the majority correctly noted that a sentencing chart prepared on behalf of this Court indicated that luring convictions were probation eligible. *See Moninger*, 251 Ariz. at 502–03 ¶ 59. Though the sentencing chart made available by the Administrative Office of the Courts may be instructive, it may only be relied on to the extent it comports with the law.