IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,
*Appellee*,

*v.*

DOMINICK COOKE,
*Appellant*.

No. 2 CA-CR 2024-0002
Filed December 24, 2024

Appeal from the Superior Court in Pima County
No. CR20213335001
The Honorable Brenden J. Griffin, Judge

**AFFIRMED IN PART; REVERSED IN PART;
VACATED IN PART AND REMANDED**

COUNSEL

Kristin K. Mayes, Arizona Attorney General
Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals
By Joshua C. Smith, Assistant Attorney General, Phoenix
*Counsel for Appellee*

Law Office of Hernandez & Hamilton PC, Tucson
By Carol Lamoureux and Joshua F. Hamilton
*Counsel for Appellant*

---

**OPINION**

---

Presiding Judge Sklar authored the opinion of the Court, in which Vice Chief Judge Eppich and Judge Brearcliffe concurred.

---

S K L A R, Presiding Judge:

¶1        Dominick Cooke fired a single gunshot into a car with four passengers.  As a result, he was convicted of four counts of aggravated assault with a deadly weapon—one per passenger—as well as five counts of other crimes.  He argues, though, that because he fired only a single shot, he could properly be convicted of only a single count of aggravated assault with a deadly weapon.

¶2        To accept this argument, we would have to agree with Cooke that the unit of prosecution for aggravated assault with a deadly weapon is conduct-driven only.  We do not.  As we explain below, the crime is premised on the commission of an assault, which is at least partially a victim-driven offense.  Thus, a single action that harms multiple victims can result in multiple convictions for aggravated assault with a deadly weapon. It follows that Cooke was properly convicted of these four counts.  His single gunshot had four victims—two children who were struck and two parents who were placed in reasonable apprehension of imminent physical injury.

¶3        However, we also conclude that the trial court fundamentally erred in instructing the jury on three of the nine counts for which Cooke was convicted, including two of the deadly-weapon counts.  Both the instructions and verdict forms referenced the wrong crimes.  For one count—aggravated assault causing serious physical injury to one of the children—the error was sufficiently prejudicial to require reversal.  We also conclude that the court should have granted Cooke's motion for judgment of acquittal on a count of aggravated assault causing temporary but substantial disfigurement to the other child.  Finally, we conclude that the court erred in sentencing Cooke to day-for-day sentences for two convictions, as he is entitled to earned-release credits.  We therefore affirm Cooke's convictions and sentences in part, reverse them in part, vacate them in part, and remand for further proceedings.

## BACKGROUND

¶4        We view the facts "in the light most favorable to sustaining the jury's verdict" and construe all reasonable inferences against the defendant. *State v. Fierro*, 254 Ariz. 35, ¶ 2 (2022). While driving, Cooke got into an altercation with another driver, H.A. H.A. was driving his truck with his wife, S.L., in the passenger seat and his twin five-year-old daughters—A.A. and M.A.—in the back seat.

¶5        Cooke displayed a firearm and fired one round into H.A.'s truck as he drove away. The bullet pierced the truck's door, shattered A.A.'s right shinbone, ricocheted, and grazed M.A.'s arm.

¶6        The grand jury indicted Cooke on four counts of aggravated assault with a deadly weapon as well as single counts of: (1) possession of a weapon by a prohibited possessor, (2) unlawful discharge of a firearm in city limits, (3) drive by shooting, (4) aggravated assault resulting in temporary but substantial disfigurement to M.A., and (5) aggravated assault causing serious physical injury to A.A. The jury found him guilty on all nine counts.

¶7        The trial court sentenced Cooke to consecutive and concurrent prison terms, resulting in cumulative terms totaling forty-eight years. The court ordered that the deadly-weapon sentences relating to the children were to be served "day-for-day," as was the sentence for aggravated assault causing serious physical injury to A.A.

## MULTIPLICITY OF CONVICTIONS

¶8        Cooke first argues that because all four counts of aggravated assault with a deadly weapon arose from a single gunshot, the convictions are multiplicitous and therefore violate the Double Jeopardy Clauses of the United States and Arizona Constitutions. U.S. Const. amend. V; Ariz. Const. art. II, § 10. Multiplicity occurs when a defendant is punished multiple times for the same act. *See Romero-Millan v. Barr*, 253 Ariz. 24, ¶ 20 (2022). Cooke did not object at trial, so we review for fundamental and prejudicial error. *State v. Escalante*, 245 Ariz. 135, ¶ 12 (2018). However, fundamental error occurs when a defendant is convicted or sentenced in violation of the Double Jeopardy Clause. *State v. Jurden*, 239 Ariz. 526, ¶ 7 (2016). We review de novo whether convictions or sentences are multiplicitous under their respective statutes. *See id.*

**I.      Background on multiplicity and assault offenses**

**¶9**            As our supreme court recently explained in *State v. Moninger*, determining whether charges are multiplicitous requires us to identify the offense's "allowable unit of prosecution." ___ Ariz. ___, ¶ 13, 552 P.3d 519, 523 (2024).  The "unit of prosecution" is the "scope of conduct for which a discrete charge can be brought." *Romero-Millan*, 253 Ariz. 24, ¶ 20. Generally, determining a unit of prosecution requires us to look to the statute's "syntax and grammar" and read the statute "in context . . . ." *Moninger*, ___ Ariz. ___, ¶ 13, 552 P.3d at 523.

**¶10**          The crime at issue here—aggravated assault with a deadly weapon—is one of eleven forms of aggravated assault defined by A.R.S. § 13-1204(A).  But the definition is not wholly contained in Section 13-1204. Rather, that statute requires a defendant to "commit[] assault as prescribed by § 13-1203."  That section, in turn, defines assault as taking any of three forms:  (1) "causing any physical injury to another person"; (2) "placing another person in reasonable apprehension of imminent physical injury"; or (3) "touching another person . . . to injure, insult or provoke such person."  § 13-1203(A).

**¶11**          To those requirements, Section 13-1204(A)'s eleven subsections each add a separate means by which an assault becomes aggravated. *See State v. Kelly*, 257 Ariz. 101, ¶ 18 (App. 2024) (concluding that each subsection creates separate offense).  Relevant here is subsection (A)(2), which applies "[i]f the person uses a deadly weapon or dangerous instrument."

**II.   Unit of prosecution for aggravated assault with deadly weapon**

**¶12**          In Cooke's view, subsection (A)(2) creates a "conduct-driven" unit of prosecution.  In other words, he argues that each "use" of a deadly weapon is a separate crime.  It follows, he argues, that because he fired only one shot, he was eligible for only one conviction, regardless of how many occupants were in the truck or how many victims the bullet struck.

**¶13**          But by focusing narrowly on the word "uses" in subsection (A)(2), Cooke incorrectly applies the methodology for determining units of prosecution.  As *Moninger* teaches, we do not look at the verbs in isolation. *See* ___ Ariz. ___, ¶ 20, 552 P.3d at 524.  We also consider the "object(s) of these verbs." *Id.*  We do so by "asking *what, who, for what, to whom*, or *from whom* the proscribed action is concerned with or directed toward." *Id.* Where conduct can be directed at different objects, each object yields a

4

separate unit of prosecution. *See id.* ¶¶ 20-21, 26 (concluding that defendant can commit multiple crimes of luring when "offers or solicitations are directed at more than one victim").

¶14 For assault, Section 13-1203(A) identifies the object as "another person," regardless of the form of assault committed. Because aggravated assault with a deadly weapon is premised on the existence of an assault, "another person" is also the object of aggravated assault with a deadly weapon. §§ 13-1203(A); 13-1204. As this case illustrates, a single "use" of a deadly weapon could "caus[e]" multiple "physical injur[ies]" and "plac[e]" multiple people in "reasonable apprehension of imminent physical injury . . . ." A.R.S. §§ 13-1204(A)(2), 13-1203(A)(1), (2). If it does so, that "use" has multiple objects.

¶15 Thus, under these circumstances, firing a single shot constitutes multiple aggravated assaults with a deadly weapon. *See Jurden*, 239 Ariz. 526, ¶¶ 1, 25 (stating, in case addressing resisting-arrest statute, that Sections 13-1203 and 13-1204 "separately and properly criminalize victim-directed offenses"). Put differently, a defendant commits a separate aggravated assault with a deadly weapon on each victim. *See also State v. Henley*, 141 Ariz. 465, 467 (1984) (stating, in case addressing consecutive sentencing rather than units of prosecution, "When the act of firing one bullet results in two persons being injured, the person firing the bullet is responsible for two separate and distinct injuries and therefore has committed two assaults."), *abrogated on other grounds by State v. Soliz*, 223 Ariz. 116 (2009).

¶16 Section 13-1204's structure provides an additional reason for this interpretation. Only two of Section 13-1204(A)'s eleven subsections employ the verb "uses." A.R.S. § 13-1204(A)(2) ("[i]f the person uses a deadly weapon or dangerous instrument"), (11) ("[i]f the person uses a simulated deadly weapon"). Under Cooke's analysis, those subsections would require a different unit of prosecution than the remaining nine, though all are premised on the same underlying offense—assault. Cooke implicitly concedes this point, at least as to some subsections of Section 13-1204(A). Indeed, accepting Cooke's interpretation would mean that a defendant who fires a single gunshot could be convicted of only one count of aggravated assault with a deadly weapon but multiple counts of simple assault or other forms of aggravated assault. We will not indulge this absurd result. *See State v. Ariz. Bd. of Regents*, 253 Ariz. 6, ¶ 28 (2022) ("In considering two plausible interpretations of a statute, we will not credit one that leads to absurd results.").

**¶17** In his reply brief, Cooke argues that other subsections of Section 13-1204(A) suggest that aggravated assault with a deadly weapon is conduct-driven. While he correctly notes that some of the subsections contain different requirements or language, none of his arguments allow us to ignore the victim-driven language of Section 13-1203. Nor does this case require us to parse the extent to which the offense could also be understood as conduct-driven, such as when a defendant uses a deadly weapon multiple times against a single victim. *See State v. Rios*, 252 Ariz. 316, ¶ 24 (App. 2021) (noting state has discretion in bringing number of independently-provable aggravated assault charges).

**¶18** Finally, Cooke points to non-Arizona statutes that, in his view, support his analysis. But our task is to interpret the statutes before us. *See Kotterman v. Killian*, 193 Ariz. 273, ¶ 68 (1999) (noting Arizona courts have discretion in accepting another jurisdiction's interpretation of its laws). The non-Arizona statutes are irrelevant. *See Moninger*, ___ Ariz. ___, ¶ 13, 552 P.3d at 523 (stating that we apply unambiguous Arizona statutes "as written").

**¶19** Applying our unit-of-prosecution analysis here, because each of the truck's four passengers was a victim—or object—of Cooke's conduct, his four convictions for assault with a deadly weapon are not multiplicitous. And because the statute is unambiguous, we need not address Cooke's arguments concerning legislative intent.

## JURY INSTRUCTIONS AND VERDICT FORMS

**¶20** Cooke also argues that the trial court fundamentally erred by instructing the jury on uncharged offenses and failing to instruct it on offenses that had been charged. We review de novo the jury instructions to determine whether they correctly express the law. *State v. Ewer*, 254 Ariz. 326, ¶ 10 (2023). Cooke did not object at trial, so we will vacate only those convictions for which he shows fundamental, prejudicial error. *See Escalante*, 245 Ariz. 135, ¶¶ 12, 40, 42.

## I. Background

**¶21** At issue are the six counts related to aggravated assault. As noted, these included one count of assault with a deadly weapon for each of the four victims, one count of temporary but substantial disfigurement for M.A.'s injury, and one count of serious physical injury for A.A.'s injury.

¶22 The jury instructions identified three forms of aggravated assault. They did not, however, mirror the three crimes with which Cooke was charged. The instructions read:

> The crime of aggravated assault requires proof of the following: One, the defendant committed an assault; *and* two, the assault was aggravated by at least one of the following factors: The defendant used a deadly weapon; *or* the defendant was 18 years of age or older and the person assaulted was 15 years of age or under; *or* the assault was committed by any means of force that caused temporary but substantial disfigurement, temporary but substantial loss or impairment of any body organ or part, or a fracture of any body part.

Cooke was not charged with the second type of aggravated assault contained in the instructions—assault on a minor fifteen years of age or under by a person at least eighteen years old. A.R.S. § 13-1204(A)(6). The instructions also omitted one form of aggravated assault for which Cooke had been charged—assault causing "serious physical injury" to A.A. A.R.S. § 13-1204(A)(1).

¶23 Some of the verdict forms also failed to match the charged crimes. On counts three and four, the deadly-weapon charges involving M.A. and A.A., the verdict forms did not reference the crime of aggravated assault with a deadly weapon. Instead, they referenced "Aggravated Assault of a Minor Under Fifteen," the offense not alleged by the state. *See* § 13-1204(A)(6). The verdict form for count nine—aggravated assault causing serious physical injury to A.A.—contained a similar error. Rather than referencing the charged crime, the forms instead referenced "Aggravated Assault of a Minor Under Fifteen" and "Physical Injury."

## II. Whether the trial court committed fundamental error

¶24 "Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused." *Dunn v. United States*, 442 U.S. 100, 106 (1979). Thus, it is fundamental error to "relieve[] the State of its burden of proving an element of the offense . . . ." *State v. Dickinson*, 233 Ariz. 527, ¶ 12 (App. 2013) (quoting *State v. Kemper*, 229 Ariz. 105, ¶ 5 (App. 2011)). Such errors go to the foundation of the case. *Escalante*, 245 Ariz. 135, ¶ 18.

¶25 We conclude that the trial court committed fundamental error in connection with the instructions and verdict forms. Taken together, the instructions directed the jury that it could convict Cooke on the three counts at issue if it found any form of aggravated assault contained in the instructions. This included the uncharged crime of assaulting a victim fifteen years of age or under while being eighteen years of age or older. Contrary to the state's argument, the instructions did not benefit Cooke by adding elements to the charged offenses. They instead substituted an uncharged crime for the charged crime.

¶26 The verdict forms compounded the fundamental error. They did not specify that the jury was required to conclude that counts three and four involved the use of a deadly weapon. Nor did they require the jury to conclude that count nine involved a serious physical injury. And while the state argues that the jury could have consulted the indictment to properly understand the instructions, the indictment contained a similar error. It did reference the correct statutory subsections, but it titled counts three, four, and nine as "aggravated assault of a minor under fifteen," the uncharged crime. We therefore reject the state's argument. Rather, we presume—as we routinely do—that the jury followed its instructions. *State v. Newell*, 212 Ariz. 389, ¶ 68 (2006). And because those instructions were incorrect, they relieved the jury of its burden of finding an element of counts three, four, and nine. *Dickinson*, 233 Ariz. 527, ¶ 12.

## III. Whether the errors prejudiced Cooke

¶27 We must next determine whether the fundamental errors prejudiced Cooke. *Escalante*, 245 Ariz. 135, ¶ 21. Doing so requires us to determine whether a reasonable jury could have arrived at a different verdict. *Id.* ¶ 29. This analysis is an objective "inquiry necessarily exclud[ing] imaginative guesswork." *Id.* ¶ 31.

¶28 For the deadly-weapon convictions for counts three and four, we conclude that no prejudice occurred. As explained above, those counts arose from the same conduct that resulted in the other two deadly-weapon convictions, with H.A. and S.L. as the victims. Cooke correctly concedes that for the charges involving H.A. and S.L., the jury was instructed that it was required to find that he used a deadly weapon. The verdict forms reflected this requirement. And the evidence demonstrates that all four charges arose from the same conduct involving Cooke's gun. Thus, any reasonable jury would have concluded that Cooke had used a deadly weapon against the other victims too.

**¶29**     At oral argument, Cooke pointed to a scenario that he believes would have allowed a jury to find him guilty on the deadly-weapon counts involving H.A. and S.L., but not on the counts involving A.A. and M.A. He argues that the jury could have found that his girlfriend, who was in the car with him, actually fired the shot. He further argues that such a finding would not have undermined the guilty verdicts for the charges involving H.A. and S.L. Those charges, which involved placing H.A. and S.L. in reasonable apprehension of imminent physical injury, could have arisen simply from Cooke brandishing the weapon before the shot was fired.

**¶30**     Cooke's argument does not satisfy the demanding prejudice standard applicable to fundamental-error review. *See id.* ¶ 31. H.A. and S.L. both testified the weapon was fired mere seconds after Cooke brandished the firearm, which suggests it did not change hands. The jury also heard a recorded jail call from Cooke asking his girlfriend to confess to the shooting. After that call, the girlfriend—who by then was Cooke's wife—testified that she picked up the weapon and accidentally "made the gun go off." This was even though she had previously told police that she had not shot the gun. Although not dispositive for our analysis, the trial court stated—in connection with a different issue and outside the jury's presence—that her conflicting statements were "not even plausible." Under the circumstances, no reasonable jury could have accepted Cooke's argument and concluded that his then-girlfriend fired the shot.

**¶31**     We reach a different conclusion concerning the serious-physical-injury conviction in count nine. The applicable statute defines "serious physical injury" as injury that "creates a reasonable risk of death, or that causes serious and permanent disfigurement, serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb." A.R.S. § 13-105(39). The injury must exceed that of a temporary but substantial impairment and the "usual temporary impairment caused by the fracture of a body part." *State v. Mwandishi*, 229 Ariz. 570, ¶ 8 (App. 2012) (quoting *State v. George*, 206 Ariz. 436, ¶ 9 (App. 2003)). While those injuries can still lead to aggravated-assault convictions, they do so under subsections that carry less severe penalties. *Id.*; *see also* A.R.S. § 13-1204(A)(3) (identifying injuries giving rise to aggravated assault), (F) (imposing less severe penalties than for serious physical injury).

**¶32**     Still, a fracture can constitute a serious physical injury. We reached such a conclusion in *Mwandishi*, where the victim sustained a fracture to her eye socket that required surgery and led to ongoing

complications. 229 Ariz. 570, ¶¶ 2-3, 10-12. Likewise, in *State v. Peltz*, 242 Ariz. 23, ¶¶ 5-6, 9-10 (App. 2017), we concluded—albeit in a different posture than this case—that there was "substantial evidence" of a serious physical injury where the victim had sustained a laceration to her spleen, a spinal fracture, and an orbital fracture with bruising. However, the jury in that case had found the defendant guilty of aggravated assault causing temporary but substantial injury, a finding that was not challenged on appeal. *Id.* ¶¶ 6, 9-11. Taken together, these cases establish that reasonable juries have latitude in finding whether a fracture is a serious physical injury.

**¶33** Here, the bullet shattered A.A.'s right shin bone. She went to the hospital, underwent two surgeries on her leg, wore a cast for roughly four or five months, and participated in physical therapy for a few more months. This recovery was arguably slower and more difficult than a typical recovery from a fracture. Consistent with *Mwandishi and Peltz*, a reasonable jury could therefore have concluded that the injury involved a "serious impairment of health" or "protracted impairment of the function" of her leg. However, this was not the only plausible outcome. *See* § 13-105(39). Because A.A.'s impairment was temporary and caused by a fracture, a reasonable jury could have concluded that her injury was not a serious physical injury. We therefore conclude that the fundamental error concerning count nine was prejudicial, and we vacate Cooke's conviction on that count.

## MOTION FOR ACQUITTAL

**¶34** Cooke next argues that the trial court improperly denied his motion for acquittal on counts eight and nine. Count eight alleged aggravated assault causing substantial and temporary disfigurement to M.A. As noted, count nine alleged aggravated assault causing serious physical injury to A.A. We review this issue de novo. *State v. Andersen*, 255 Ariz. 320, ¶ 7 (App. 2023).

### I. Background

**¶35** In reviewing the trial court's denial of the acquittal motions, we "determine whether 'substantial evidence exists to support the jury verdict,' viewing the facts in the light most favorable to sustaining the verdict." *State v. Payne*, 233 Ariz. 484, ¶ 93 (2013) (quoting *State v. Stroud*, 209 Ariz. 410, ¶ 6 (2005)). Substantial evidence is greater than a "mere scintilla" in that a reasonable person could find it sufficient to support a guilty verdict beyond a reasonable doubt. *State v. Hughes*, 189 Ariz. 62, 73 (1997) (citations omitted).

¶36     We "do not reweigh the evidence to decide if [we] would reach the same conclusions as the trier of fact." *State v. Dodd*, 244 Ariz. 182, ¶ 8 (App. 2017) (quoting *State v. Borquez*, 232 Ariz. 484, ¶ 9 (App. 2013)). Rather, we evaluate sufficiency of the evidence against the offense's statutorily-required elements. *State v. Pena*, 209 Ariz. 503, ¶ 8 (App. 2005). We will not vacate a conviction unless (1) "there is a complete absence of probative facts to support the verdict" and (2) "rational jurors could not have found the defendant guilty beyond a reasonable doubt." *State v. George*, 206 Ariz. 436, ¶ 3 (App. 2003).

¶37     As we have explained, A.A.'s injuries occurred when the bullet shattered her right shin bone. The bullet then exited her body and scraped M.A.'s left arm, leaving a pea-sized wound. M.A.'s scrape was superficial and treated on the scene with a bandage. It left a scar.

## II.     Whether sufficient evidence demonstrated a substantial but temporary disfigurement to M.A.

¶38     We first address whether sufficient evidence demonstrated that the injury to M.A., which was the subject of count eight, constituted the substantial but temporary disfigurement required under A.R.S. § 13-1204(A)(3). The term "substantial but temporary disfigurement" is not defined. *See* A.R.S. §§ 13-1204, 13-105. Rather, the jury must decide if the disfigurement is substantial based on the facts of the case. *Pena*, 235 Ariz. 277, ¶ 11. It may consider factors such as the injury's location, seriousness, visibility to others, and duration. *Id.* We focus on the injury itself, not the conduct giving rise to it. *See State v. Gunter*, 132 Ariz. 64, 69 (App. 1982). For example, we have concluded in that "the mere fact that a victim has been shot, without more, does not warrant" finding serious impairment. *George*, 206 Ariz. 436, ¶ 14.

¶39     Temporary and substantial disfigurement need not rise to the level of a fracture or amputation, but it "must reflect an injury commensurate with the enhanced penalties for aggravated assault." *Id.* For comparison, a defendant who knowingly commits a simple assault is subject only to a class one, two, or three misdemeanor with a maximum of six months' incarceration. A.R.S. §§ 13-707(A)(1), 13-1203(A), (B). Yet a conviction of aggravated assault causing temporary but significant disfigurement is a class four felony with a range of four to eight years in prison. A.R.S. §§ 13-1204(A)(3), (F), 13-704(A).

¶40     Here, Cooke concedes M.A.'s visible scar is a disfigurement but argues that no reasonable jury could find it substantial. We agree. The

11

photos admitted at trial show that M.A.'s injury was comparable to a small bruise, as reinforced by the fact that the only treatment necessary was a bandage. While the circumstances of the injury were terrible, the injury was thankfully minor. We do not conclude that it was commensurate with the enhanced penalties for aggravated assault. *Pena*, 235 Ariz. 277, ¶ 11. No properly-instructed, reasonable jury could find Cooke guilty. *George*, 206 Ariz. 436, ¶ 3. We therefore reverse his aggravated assault conviction arising from temporary but substantial disfigurement.

## III. Whether sufficient evidence demonstrated a serious physical injury to A.A.

**¶41** We next address whether sufficient evidence demonstrated that the injury to A.A., which was the subject of count nine, constituted a serious physical injury as required by A.R.S. § 13-1204(A)(2). We address this matter even though we have vacated the conviction in case the state retries Cooke on count nine. *See State v. Moody*, 208 Ariz. 424, ¶ 26 (2004). And as we have explained, substantial evidence would allow a properly-instructed jury to find that A.A.'s injury was serious, especially given her lengthy recovery. The court correctly denied Cooke's motion for judgment of acquittal on count nine.

## DAY-FOR-DAY SENTENCING

**¶42** Finally, Cooke argues the trial court committed fundamental error when it ordered that he serve the sentences for aggravated assault with a deadly weapon against the children and the serious physical injury against A.A. day-for-day. We review de novo whether the trial court properly sentenced a defendant. *State v. Brock*, 248 Ariz. 583, ¶ 27 (App. 2020). An illegal sentence constitutes fundamental error and warrants resentencing. *State v. Allen*, 253 Ariz. 306, ¶ 220 (2022).

**¶43** Cooke's argument is premised on the fact that he was convicted of dangerous offenses as defined by A.R.S. § 13-704. That statute does not require day-for-day sentences—also known as "flat time" sentences—because defendants are eligible for earned-release credits. A.R.S. §§ 13-704(G), 41-1604.07. By contrast, A.R.S. § 13-705, which concerns dangerous crimes against children, does require day-for-day sentences in certain circumstances. § 13-705(K). The state alleged that Cooke had committed DCAC offenses, but the jury was not instructed on the DCAC statute and made no findings that it applied. Nevertheless, in its briefing, the state argued that we should affirm the day-for-day sentences and simply modify them to reflect DCAC convictions.

**¶44**     At oral argument, however, the state conceded error.  It acknowledged that under these facts, exposing Cooke to a DCAC sentence would violate *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  That case holds, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Indeed, a DCAC conviction requires a finding not required for dangerous offenses, namely, that the defendant "focused on, directed against, aimed at, or target[ed] a victim under the age of fifteen."  *See State v. Sepahi*, 206 Ariz. 321, ¶ 19 (2003) (quoting *State v. Williams*, 175 Ariz. 98, 103 (1993)).

**¶45**     Because the jury was not asked to make such a finding, and the evidence was at best conflicting, a reasonable jury could conclude that Cooke's conduct did not satisfy this requirement.  Cooke satisfies the prejudice requirement for fundamental error.  *See State v. Trujillo*, 227 Ariz. 314, ¶ 21 (App. 2011) (finding prejudicial error when trial court had considered improper reasons to impose harsher sentence).  We therefore conclude that the trial court's apparent conflation of the dangerousness and DCAC statutes resulted in an illegal sentence.

## DISPOSITION

**¶46**     We affirm the four convictions and sentences for aggravated assault with a deadly weapon.  We vacate the conviction for aggravated assault causing serious physical injury to A.A., and we remand for further proceedings.  We reverse the conviction for aggravated assault causing temporary but substantial disfigurement to M.A.  Finally, we remand for the trial court to correct the sentences for the dangerous offenses of aggravated assault with a deadly weapon.  The court shall direct that Cooke must serve those sentences in accordance with Section 41-1604.07, such that he is entitled to earned release credits.